### In re Robert William MacDONALD, Debtor.

### Julie MacDonald ENGRAM, Plaintiff,

### v.

### Robert William MacDONALD, Defendant.

**Bankruptcy No. 94–77576.**
**Adversary No. 95–6172.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 26, 1996.

William L. Sanders, Atlanta, GA, for plaintiff.

Dale R.F. Goodman, Atlanta, GA, for defendant.

### ORDER

MARGARET H. MURPHY, United States Bankruptcy Judge.

This adversary proceeding is before the court following trial. Plaintiff seeks a determination that the $10,000 obligation owed to her by Debtor is nondischargeable support pursuant to § 523(a)(5). Debtor argues that the obligation is a dischargeable property division.

### FINDINGS OF FACT

Plaintiff and Debtor were married in 1982. The parties have no children of the marriage. After six years of marriage, Debtor sought a divorce. He retained an attorney who drafted an uncontested divorce complaint which provided for a "no-fault" divorce and no payment of alimony or support by either party.

Upon receipt of Debtor's divorce complaint, Plaintiff contacted an attorney of her own. Plaintiff's divorce attorney prepared and filed Plaintiff's response to Debtor's divorce complaint. Plaintiff's response contained a counterclaim for alimony. The parties subsequently executed a settlement agreement which was incorporated into the divorce decree.

At the trial in this adversary proceeding, the divorce attorneys for both Debtor and Plaintiff testified. Both attorneys, however, had little independent memory of the events surrounding the parties' divorce. The parties themselves testified and had better independent recollection regarding the divorce proceedings and negotiations.

After Plaintiff's answer and counterclaim were filed, the parties' divorce attorneys negotiated to reach a settlement agreement in the divorce proceeding. By letter dated June 16, 1988, Plaintiff's attorney presented to Debtor's attorney a proposed settlement which included:

(a) A demand that Debtor indemnify her from all debts, including tax debts, incurred during the marriage;

(b) A list of the personal property Plaintiff sought Debtor to return;

(c) Reimbursement of her attorneys fees and

(d) My understanding is that Mr. MacDonald caused Mrs. MacDonald to sell and lose some land in South Georgia which was to be her inheritance to front Mr. MacDonald's investments. Particularly, Mr. MacDonald caused Mrs. MacDonald to have the timber cut off her land, which was sold for $20,000 and which he has since disposed of. Mrs. MacDonald wants a note from Mr. MacDonald in the amount of $20,000 to repay her for this. She is willing to provide a reasonable amount of time for him to pay at a reasonable rate of interest. I have discussed with her his impending bankruptcy.

Shortly after the letter was sent, on June 24, 1988, Plaintiff and Debtor signed the settlement agreement which was subsequently incorporated in the divorce decree dated September 28, 1988. The Settlement Agreement is divided into seven articles, each of which is labelled: for example, Article IV is labelled "DIVISION OF PROPERTY" and deals with the division of the parties' personal property. The parties owned no real property. Article V is labelled "PAYMENT OF DEBTS AND OBLIGATIONS" and Article VI is labeled "ALIMONY."

Article VI, § 6.01(c) provides for payment by Debtor to Plaintiff, "as further alimony," of $20,000 in 24 monthly payments beginning

July 1, 1990. Section 6.01(d) provides for payment of $500 to Plaintiff's attorney and the last two subsections provide as follows:

(e) It is the intent of the parties that these sums are alimony and non-dischargeable under the provisions of the Federal Bankruptcy Act.

(f) These payments of alimony are intended by both parties to be non-deductible by the payor Husband and non-includable as income to the recipient Wife.

In Article VII labeled "GENERAL PROVISIONS," § 706 provided that the labels of the articles are not to be used "in construing this agreement or ascertaining the intention of the parties."

At trial the parties testified concerning their income and financial resources immediately prior to the divorce.[1] Plaintiff is a registered nurse but during the marriage and until Debtor filed for divorce, Plaintiff had not been employed full time. Also, immediately prior to the divorce, as a result of Debtor's business reverses, the marital residence had been sold at foreclosure, the parties' vehicles had been repossessed and the parties' cash reserve and available credit had been depleted. Plaintiff's tax return for 1988 shows an adjusted gross income of $38,289. Debtor's 1988 tax return shows an adjusted gross income of $65,458. Debtor was employed in commission sales.

In the negotiations regarding the settlement agreement, as a result of the recent business reverses, Debtor requested a postponement in the starting date for the payments to Plaintiff under the agreement, to enable Debtor to "get back on his feet." Therefore, the parties agreed to have the payment from Debtor to Plaintiff commence two years after the date the agreement was signed.

Central to Debtor's argument that the obligation to Plaintiff is a dischargeable division of property is a timber transaction between Debtor and Plaintiff's brother in 1985 or 1986. Upon Plaintiff's father's death, Plaintiff's mother inherited some timberland. One of Plaintiff's brothers managed land and timber for his mother. Neither Plaintiff nor Plaintiff's two brothers held any legal interest in the property or the timber. The land and timber, however, did represent a potential inheritance. Debtor and Plaintiff's brother entered into a transaction whereby Debtor received $20,000 from the sale of some of the timber from the land, which Debtor used in his business. The testimony regarding the details of that transaction was extremely vague but apparently Debtor was expected to repay the $20,000 but failed to do so when his business failed. No documents evidencing the transaction were presented.

Debtor argues that the $20,000 obligation in the settlement agreement was intended by the parties to be a repayment of the $20,000 Debtor received as a result of the timber transaction. Although the details of the timber transaction are unclear, clearly Plaintiff owned no interest in the property or the timber and the debt which arose as a result of the transaction was owed by Debtor to Plaintiff's brother or Plaintiff's mother. Nevertheless, it appears that Debtor assumes his failure to repay the $20,000 creates a debt which will be deducted from Plaintiff's share when she becomes heir to the property, thereby transferring the debt from Plaintiff's brother or mother to Plaintiff herself.

Debtor argues that the provision quoted above (that the parties intend the obligation to be alimony and nondischargeable in bankruptcy) does not evidence the true intent of the parties but was merely an attempt by Plaintiff's divorce attorney to "bankruptcy proof" the settlement agreement. Debtor testified that he never intended to pay Plaintiff alimony or support. Debtor viewed the $20,000 obligation as repayment of the funds he received from the timber transaction. Debtor also testified, however, that he wanted his marriage to Plaintiff ended as expeditiously as possible. Debtor admits he signed the settlement agreement and was aware of the provisions in the agreement.

Plaintiff testified that the divorce proceeding was initiated by Debtor and that Plaintiff was not herself anxious to dissolve the marriage. When her attorney presented her with the settlement agreement negotiated on

---

1. Evidence concerning the parties' income subsequent to the divorce was excluded as irrelevant.

her behalf, Plaintiff was surprised but pleased. Plaintiff testified that she had relied totally on her attorney to negotiate the settlement and that she had given her attorney no precise instructions regarding amounts or terms for the settlement.

## CONCLUSIONS OF LAW

■ Section 523(a)(5) of the Bankruptcy Code provides, in part, that a debt is nondischargeable if it is owed:

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, or property settlement agreement, but not to the extent that—

> . . . . .

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

The general bankruptcy rule is that exceptions to dischargeability should be construed in favor of the debtor. *In re Hunter*, 780 F.2d 1577 (11th Cir.1986). This general rule in favor of the debtor is overcome, however, by the Congressional policy which favors enforcement of obligations for spousal and child support. *Harrell v. Sharp*, 754 F.2d 902 (11th Cir.1985); *Shine v. Shine*, 802 F.2d 583 (1st Cir.1986); *Cain v. Isenhower*, 29 Bankr. 591 (Bankr.N.D.Ind.1983).

■ In the instant case, the settlement agreement contained a provision that Debtor's obligation to Plaintiff was intended by the parties to be nondischargeable in bankruptcy. Very clearly, that provision was an attempt by Plaintiff's divorce attorney to "bankruptcy-proof" the agreement. A determination regarding dischargeability, however, cannot be made in advance of the filing of a bankruptcy petition, and such a provision in a settlement agreement is unenforceable as in conflict with the purpose and policies of the bankruptcy process. *Wheeler v. Wheeler*,

122 B.R. 645 (Bankr.D.R.I.1991); *Light v. Adkins*, 151 B.R. 458 (Bankr.M.D.Tenn. 1992); *Carbia v. Clark*, 113 B.R. 761 (Bankr. S.D.Fla.1990); *Freeman v. Freeman*, 165 B.R. 307 (Bankr.S.D.Fla.1994). Therefore, the provision in the settlement agreement in this case which purports to determine the dischargeability of Debtor's obligation to Plaintiff is irrelevant.

■ Determining whether a particular claim is "actually in the nature of alimony, maintenance, or support" is a matter of federal bankruptcy law, not state law. *Harrell v. Sharp*, 754 F.2d 902; *Myers v. Myers*, 61 Bankr. 891 (Bankr.N.D.Ga.1986). The focus of the determination of the nature of the obligation is on the intent underlying the award. *Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989); *West v. West*, 95 Bankr. 395 (Bankr.E.D.Va.1989). *See also, Harrell*, 754 F.2d 902. If, as in the instant case, the divorce decree were obtained by agreement between the parties, the intent of the parties is the focus. If the divorce proceeding were contested, the intent of the trier of fact is the focus. *West*, 95 Bankr. at 399.

■ The labelling of an obligation in an agreement or court order as alimony, maintenance or support does not conclusively establish the nature of the obligation because the bankruptcy court must determine dischargeability based on the substance and function of the obligation rather than its form. *Erspan v. Badgett*, 647 F.2d 550 (5th Cir.1981); *In re Spong*, 661 F.2d 6 (2d Cir.1981); *Winn v. Winn*, 95 Bankr. 839 (Bankr.S.D.Fla.1988). While the label placed upon an obligation is not dispositive, it is indicative of the parties' intent. *Coleman v. Coleman*, 152 B.R. 779 (Bankr.M.D.Fla.1993). Indeed, some courts have found that the parties' statements of their intent regarding the nature of a particular obligation are virtually conclusive under principles of collateral estoppel or contract law.[2] *See, Goss v. Goss*, 131 B.R. 729 (Bankr.D.N.Mex.1991); *Clark v. Clark*, 105 B.R. 753 (Bankr.S.D.Ga.1989), *aff'd*, 113 B.R. 797 (S.D.Ga.1990), *rev'd in part and vacated*

---

2. Neither the principles of collateral estoppel nor principles of contract law, such as the parol evidence rule, were argued in this case.

*in part w/o published opinion,* 925 F.2d 1476 (11th Cir.1991); *Leslie v. Hart,* 130 B.R. 817 (Bankr.N.D.Ind.1991); *Long v. Long,* 102 N.C.App. 18, 401 S.E.2d 401 (1991); *Ferebee v. Ferebee,* 129 B.R. 71 (Bankr.E.D.Va.1991).

 Consideration of other factors are relevant in ascertaining intent behind the obligation:

1. Whether the obligation terminates upon the death or remarriage of Defendant, as is common with support obligations. *In re Basile,* 44 Bankr. 221 (Bankr.M.D.Fla.1984).

2. Whether the payments are periodic or lump sum payments. Lump sum payments or payments for a specified period for a sum certain tend to indicate property division. *In re Bedingfield,* 42 Bankr. 641 (S.D.Ga.1983); *In re Vickers,* 24 Bankr. 112 (Bankr. M.D.Tenn.1982).

3. The disparity between the relative earning powers of the parties. *Balthazor v. Winnebago County,* 36 Bankr. 656; *Mitchell v. Mitchell,* 132 B.R. 585 (S.D.Ind.1991).

4. The structure and terms of the Agreement itself. *Mitchell v. Mitchell,* 132 B.R. 585 (S.D.Ind.1991).

5. Enforceability by attachment for contempt. *In re Coffman,* 52 Bankr. 667 (Bankr.D.Md.1985).

6. Whether the parties have children whose support is in question. *Mitchell v. Mitchell,* 132 B.R. 585 (S.D.Ind. 1991).

7. Whether the former spouse is directly or only indirectly benefited. Payment to a third party on behalf of the former spouse, where the former spouse would be responsible for the debt if not paid, is a direct benefit. *Mitchell v. Mitchell,* 132 B.R. 585 (S.D.Ind.1991).

8. The ages, and the physical and emotional conditions of the parties. *McHenry v. McHenry,* 131 B.R. 669 (Bankr.N.D.Ind.1989).

9. The existence of a legal or moral "obligation" to pay alimony or support. *In re Stone,* 79 B.R. 633 (Bankr.D.Md. 1987).

10. The circumstances contributing to the estrangement of the parties. *Stone,* 79 B.R. 633.

11. The tax treatment of the payment by the debtor spouse. *Stone,* 79 B.R. 633; *Parrott v. Parrott,* 1:95–cv–635–FMH (N.D.Ga., April 24, 1995).

In the instant case, the various applicable factors are inconsistent. The divorce agreement contains a clear and unambiguous statement that the obligation is alimony but also contains a clear and unambiguous description of the tax treatment of the obligation which is inconsistent with the treatment of alimony under the Internal Revenue Code, Title 26 of the U.S.Code. At the time of the divorce, a significant disparity in the income of the parties existed but Plaintiff agreed that the payments from Debtor would be delayed for two years. Debtor maintains the obligation represents repayment of a debt but it is a debt not owed to Plaintiff and the obligation carries no provision for payment of interest. Conflicting inferences can be drawn from these inconsistencies.

A review of all the relevant factors together with consideration of the credibility of the parties' testimony supports a conclusion that the parties' settlement agreement represents a hybrid structure designed to mollify both parties. Plaintiff would receive the additional income from Debtor which she desired, albeit postponed, and favorable tax treatment, while Debtor received the benefit of a fixed term and amount for the payments to Plaintiff and achieved his objective of an expeditious resolution to the divorce proceeding. Following examination of the totality of the circumstances existing at the time of the divorce, as well as the settlement agreement itself, this court concludes that the provision in the settlement agreement that the parties intended that the $20,000 obligation of Debtor was alimony to Plaintiff was an accurate reflection of the parties' intent.

The original amount of obligation owed to Plaintiff was $20,000. The parties do not dispute that, prior to the date Debtor filed his bankruptcy petition, he had paid Plaintiff $10,000. Therefore, only $10,000 of the obligation remains to be paid. Accordingly, it is hereby

ORDERED that judgment of nondischargeability will be entered in favor of Plaintiff in the amount of $10,000.

IT IS SO ORDERED.