In re Royal Philip KIRCHNER,
II, Debtor.

Shelly Lynn KIRCHNER, Plaintiff,

v.

Royal Philip KIRCHNER, II, Defendant.

Bankruptcy No. 96–20976.
Adv. No. 96–2054.

United States Bankruptcy Court,
W.D. Missouri.

March 25, 1997.

Van B. Adams, California, MO, for debtor/defendant.

## ORDER

FRANK W. KOGER, Bankruptcy Judge.

Plaintiff Shelly Lynn Kirchner has filed a Complaint Objecting to Dischargeability of Debts against Debtor, alleging his debt to her is nondischargeable under 11 U.S.C. § 523(a)(15), and in the alternative, that Debtor be denied discharge pursuant to §§ 727(a)(2)(A), (2)(B), (3), (4)(A) and (4)(B). Debtor filed an answer and the matter was heard by this Court on February 19, 1997. This is a core proceeding pursuant to 28 U.S.C. § 157 and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

The marriage between Plaintiff Shelly Lynn Kirchner and Debtor Royal Philip Kirchner was dissolved by the Circuit Court of Moniteau County, Missouri, on February 7, 1996. The dissolution decree incorporated a settlement agreement entered by the parties under which Debtor agreed to pay certain marital debts. Debtor has listed several of those debts in his bankruptcy schedules as debts to be discharged in his bankruptcy. If he is discharged from liability on those debts, the creditors may pursue Plaintiff for the amounts due. At least two of them have already instituted proceedings against her. Those debts listed by Debtor to which Plaintiff complains include a debt to Beneficial Missouri, Inc., in the amount of $5,336.10; Nations Bank Mastercard in the amount of $2,936.03; Royal Waterbeds and Bedrooms [1] in the amount of $778.00; Farmers and Traders Bank of California, Missouri, in the amount of approximately $1,000; United Acceptance Corp. in the amount of $5,700.00; and the IRS in the amount of $408.31.

## NONDISCHARGEABILITY UNDER § 523(a)(15)

Plaintiff first asserts these debts should be determined to be nondischargeable under

F. Randall Waltz, III, Jefferson City, MO, for plaintiff.

**1.** Apparently, Royal Waterbeds & Bedrooms assigned the security agreement on the waterbed to American General Finance. Both are listed on Debtor's schedules: American General Finance is listed as a purchase money secured creditor in the amount of $778.00 representing a $200.00 secured portion and a $578.00 unsecured portion. Royal Waterbeds & Bedrooms is listed as an unsecured non-priority debt in the amount of $778.00. Hereafter, the Court will refer to either or both of them as the "Royal Waterbed" debt.

§ 523(a)(15). Under § 523(a)(15), a discharge under § 727 does not discharge an individual from any debt which is not of the kind described in § 523(a)(5) (for alimony, maintenance or support) which was incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement or divorce decree unless (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor; or (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

■ This Court has previously held that this statute creates a shifting burden between the plaintiff and the defendant debtor. *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr.W.D.Mo.1995) (*citing Silvers v. Silvers (In re Silvers)*, 187 B.R. 648, 649 (Bankr.W.D.Mo.1995)). First, the plaintiff must show she holds a claim not of the kind described in subsection (a)(5) and that was awarded by a court in the course of a divorce or separation. *Id.* The Court will assume, for the sake of argument, that Plaintiff has met this burden as to the debts which were allocated to Debtor under the separation agreement.[2] However, a look at the separa-

tion agreement is necessary because not all of the debts to which Plaintiff complains are specifically addressed in that agreement.

■ The debt to Beneficial Missouri represents a loan under which the parties' vehicles and personal property were pledged as collateral and which creates a second mortgage on the parties' marital home. The separation agreement states that Debtor agreed to assume and be responsible for the debt and to hold Plaintiff harmless on it. Clearly, Plaintiff has met her burden as to this debt.

On the Nations Bank Mastercard, Plaintiff was ordered to pay Debtor $32.00 per month, "the same being one-half of the monthly payment for the Mastercard bill, until paid in full." The Court notes that not only does this provision not contain a hold harmless or indemnification provision and thus may not fall within § 523(a)(15),[3] but Plaintiff is still specifically co-liable for the debt under the separation agreement. However, as mentioned, the Court will assume that because this obligation was addressed in the separation agreement, it does fall within § 523(a)(15) and that Plaintiff has therefore met her burden of showing it is a non-alimony debt incurred in connection with a divorce.

■ The Royal Waterbed debt involves a security agreement entered shortly before

2. Some courts, including Judge Federman of this district, have held that the lack of a hold harmless provision in a separation agreement prevents those debts from falling within § 523(a)(15) because without a hold harmless or indemnification provision, the separation agreement does not create a new debt "incurred in connection with the divorce." Rather, it was incurred prior to the divorce and is the same debt post-divorce as it was prior to the divorce. *See In re Stegall*, 188 B.R. 597 (Bankr.W.D.Mo.1995); *McCracken v. LaRue (In re LaRue)*, 204 B.R. 531 (Bankr. E.D.Tenn.1997); *In re Owens*, 191 B.R. 669 (Bankr.E.D.Ky.1996). In contrast, some other courts have rejected that reasoning, concluding instead that state law dictates whether an agreement to pay the debts creates a new debt to the former spouse, regardless of whether there is a hold harmless provision. *In re Schmitt*, 197 B.R. 312 (Bankr.W.D.Ark.1996); *Carlisle v. Carlisle (In re Carlisle)*, 205 B.R. 812, (Bankr.W.D.La. 1997).

Nonetheless, the Court need not decide whether the *Stegall–McCracken–Owens* rationale or the *Schmitt–Carlisle* rationale applies (and if *Schmitt* applies, what Missouri state law says on the subject), because as discussed below, the Court concludes that even after assuming Plaintiff has met her burden as to all the debts (including those without a hold harmless provision), Debtor has met his shifting burden, making the debts dischargeable anyway. In other words, as to the debts treated under the separation agreement for which there is no hold harmless agreement, the Court will assume, for the sake of argument, that Plaintiff has met her burden. The Court merely mentions this because § 523(a)(15) is a relatively new provision and practitioners should be alerted to the possibility that separation agreements which do not contain hold harmless provisions may be found to fall outside of § 523(a)(15).

3. See note 2 above.

the parties separated and which bears Plaintiff's "forged" signature. The security agreement on the waterbed, which was admitted into evidence at the hearing, is signed in both Debtor's name and Plaintiff's name. Plaintiff maintains that the signature of her name was not her signature. Debtor admitted in his answer and at the hearing that he did in fact sign her name to the agreement but that he did so while the parties were still together and that he had her permission to do so. This is discussed more fully below in relation to Plaintiff's allegation that Debtor should be denied discharge due to fraud. In any event, the date of the agreement does indicate that it was signed before the parties separated. The separation agreement provides that the party receiving personal property agreed to hold the other party harmless as to any liens on that personal property. Debtor acknowledges he received the waterbed and is currently in possession of it and it is listed as an asset (under household furnishings) in his schedules. Consequently, putting the 'forgery" issue aside for the moment and assuming for the sake of argument that Debtor had Plaintiff's permission to sign her name, Debtor agreed to hold Plaintiff harmless on that debt under the separation agreement.

■ Next, Plaintiff objects to a $1,000 debt to Framers and Traders Bank. The Court is unable to discern exactly what that debt represents. Debtor lists two debts to Farmers and Traders Bank: one is described as a "cash loan" in the amount of $200.00 and the other is described as a "purchase money security" on the parties' marital residence in the amount of $10,195.00. As mentioned, Plaintiff refers to some debt to that bank in the amount of approximately $1,000.00. It appears as though (and the Court presumes) she is referring to the mortgage on the marital residence, as she was a co-debtor on that security agreement.

Strangely, the separation agreement does not address the mortgage at all. Thus, it would at first appear to fall outside of § 523(a)(15) because Debtor did not agree to be responsible for the debt in connection with his divorce, and instead, they continue to be co-liable on the debt. However, the settlement agreement states:

> It is understood and agreed that each of the parties shall retain all of the personal property that is in the possession of either of them as his or her sole and separate property, as the case may be and shall be responsible to hold the other harmless and pay all liens encumbering such property, unless, specifically agreed to the contrary. The parties make the specific reference to the following division of personal property.

> \*      \*      \*      \*      \*      \*

> WIFE hereby releases and quit claims to HUSBAND all of her right, title and interest in and to the following:

> \*      \*      \*      \*      \*      \*

> 3.    Marital home located at 703 South Roache, California, Missouri . . .

In other words, the parties agreed to hold the other harmless on all liens encumbering the "personal property" awarded to each party and the marital residence is listed as personal property. Further, the parties seem to agree that it was their understanding that Debtor would be responsible for the mortgage on the house which he was awarded. Thus, while the separation agreement is not exactly the model of clarity in that regard, the Court finds that the separation agreement is intended to provide that Debtor agreed to pay and hold Plaintiff harmless on the mortgage. As a result, Plaintiff has met her burden as to the debt to Farmers and Traders Bank.

■ The United Acceptance Corp. debt represents a security agreement signed by both of the parties for a water softener for the marital residence which was awarded to Debtor in the separation agreement. As with the mortgage on the house, the separation agreement did not specifically address the debt on the water softener but does provide that each party was to be responsible and hold the other harmless on any liens encumbering the personal property they re-

spectively received. As the debtor received the water softener with the house, it appears as though the parties assumed Debtor would be responsible for that debt. Plaintiff has therefore met her burden on that debt as well.

■ Finally, Plaintiff seeks a declaration that a $408.31 debt listed to the IRS be declared nondischargeable and that she be held harmless on it. The only tax-related provision contained in the separation agreement provides, "HUSBAND and WIFE agree to file 1995 taxes jointly and have prepared and the cost and any proceeds or payments to be split equally [sic]." Debtor lists the IRS debt in his Schedule E as a federal income tax liability for December, 1993, not 1995. Plaintiff provided no evidence that this debt represents the 1995 tax liability which was the only tax liability he agreed to pay under the separation agreement. As a result, the Court cannot find she met her burden that the debt to the IRS was awarded in the course of her divorce under § 523(a)(15) and so the Court declines to order she be held harmless on it.

Thus, the Court finds Plaintiff has met her burden as to all of the debts except the debt to the IRS.

■ Once the plaintiff has made the initial showing that the debts are not the kind described in subsection (a)(5) and that they were awarded by a court in the course of a divorce, the debtor then bears the burden of going forward and making one of two showings. The first alternate showing is that he is unable to pay the debt from income or property not needed for the support of his child and himself and not needed to continue, preserve, or operate a business. *In re Florio*, 187 B.R. at 657. The second option the debtor has is to show that "on balance" he should be discharged because discharging the debt would result in a benefit to him that outweighs the detrimental consequences to the former spouse. *Id.; Silvers,* 187 B.R. at 649.

Debtor's schedules reflect that his net income is $1,413.58. His monthly expenses total $1,577.00. This leaves a monthly deficit of $163.42. Even if he eliminated the two listed expenses which are perhaps unnecessary for his and his daughter's support, namely cable and recreation, there is a monthly deficit of $16.42.

Furthermore, there is no evidence he has any property with which he could satisfy these debts. Although he admitted at the hearing that he had won $10,000.00 in the lottery in February of last year, he testified he spent all that money on various things including paying some of his credit card debts. The Court is convinced he no longer has any of that money.

■ Also, the Court is satisfied that Debtor's model airplane collection is not worth as much as Plaintiff maintains it is worth, even though Debtor valued the collection at $7,500 to $10,000 for purposes of obtaining a loan in March, 1995. Debtor testified that he inflated the value for purposes of obtaining the loan. Further, Plaintiff offered no evidence that Debtor has concealed part of the collection from the trustee or the Court. The trustee inspected the collection and determined it did not have significant value and should be abandoned as it was not valuable to the estate. As Plaintiff offered no other evidence that it is worth more than the Debtor and the trustee say it is worth, the Court must agree with the trustee that it is not of significant value and would not provide a source for paying the debts which Plaintiff contends should be nondischargeable.

Consequently, the Court concludes Debtor has demonstrated he cannot pay the obligations which Plaintiff contends should be nondischargeable out of income or property not reasonably necessary for his and his daughter's support. He has therefore sufficiently met his burden of showing the first of the two dischargeability alternatives under § 523(a)(15).

Although the parties did present some evidence on the second alternative (that "on balance" the benefit of discharge to Debtor would outweigh the detriment to Plaintiff),

the Court need not decide whether Debtor established that he would benefit more than Plaintiff would suffer from the discharge because the Court has already found that Debtor established he would not be able to pay the debt. The statute provides two alternatives for Debtor to establish dischargeability and he has shown one of them. *Silvers,* 187 B.R. at 650.

As in *Silvers,* this case presents the unfortunate situation so commonly associated with divorce, namely that post-divorce, the parties must support two households on the same income they once pooled to support their common household. There simply is not enough income to support the two households and to pay old marital debts. Frequently in these cases the parties have equal inability to pay the debts from the marriage and when one of them is discharged from debts he agreed to pay and hold the other spouse harmless, the result is that the other spouse's already strained budget is pushed over the edge. Again as in *Silvers,* in this case, since Debtor has sustained his burden of going forward and demonstrating his inability to pay the bills from money or property not reasonably necessary for his and his daughter's support, he must prevail under the § 523(a)(15) claim. The Court recognizes that Plaintiff testified that if the debts are discharged and she is required to pay them, she may have to file bankruptcy herself. The Court sympathizes with her predicament but unfortunately, that may be her only recourse.[4]

■ The Court feels compelled to mention an additional interesting fact in this case because it was raised at the hearing, although it is now irrelevant because of this Court's holding above. The separation agreement involved in this adversary contains a clause which states, "Any provisions and obligations contained herein, referring to child support are to be considered as not dischargeable in bankruptcy, but all other obligations are agreed to be dischargeable in bankruptcy." Although the Court has already held that the debts which Debtor assumed under the separation agreement are dischargeable under § 523(a)(15)(A), thereby making the contract provision moot, the Court felt it appropriate to address it because the Court could not recall ever seeing such a provision in a separation agreement. Generally, a separation agreement will contain a provision whereby the parties agree to the opposite: the provision usually states that any debts under the separation agreement will be *nondischargeable.* The Court's relatively cursory research on the subject indicates that the case law confirms this understanding: the Court found no cases addressing the situation where the parties contracted to make the debts dischargeable. However, the Court believes that the same rationale applied by the courts in the cases where the parties had contracted to make the debts nondischargeable also applies where the parties have contracted to make the debts dischargeable and concludes such a provision would not be totally binding on the bankruptcy court as it violates the purpose and policy of the Bankruptcy Code. *See e.g., In re MacDonald,* 194 B.R. 283, 287 (Bankr. N.D.Ga.1996) ("A determination regarding dischargeability, however, cannot be made in advance of the filing of a bankruptcy petition, and such a provision in a settlement agreement is unenforceable as in conflict with the purpose and policies of the bankruptcy process"). The Court opines that just as the determination as to whether an award is "in lieu of" or "in the nature of" alimony, maintenance or support is a federal question as to the determination of dischargeability, *vel non,* so also is the determination of the dischargeability of 11 U.S.C. § 523(a)(15) awards. *See Williams v. Williams (In re Williams),* 703 F.2d 1055, 1056 (8th Cir. 1983).

---

4. The Court notes, for what it is worth, that since Plaintiff filed this adversary complaint, Debtor has entered reaffirmation agreements with four of his creditors, including three involving Plaintiff: Farmers & Traders Bank, Beneficial Missouri, Inc., and American General Finance. He also concedes that the debt to the IRS is nondischargeable. Hopefully, this provides some amount of satisfaction to Plaintiff.

## OBJECTION TO DISCHARGE UNDER § 727

Plaintiff also asserts Debtor should be denied discharge under § 727(a)(2), (3), (4)(A) and (4)(B). The relevant portions of § 727(a) provide that the court shall grant the debtor a discharge unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, or in connection with the case—

(A) made a false oath or account; [or]

(B) presented or used a false claim. . . .

■ Specifically, Plaintiff first asserts Debtor should be denied a discharge based on § 727(a)(2), alleging he has concealed, with the intent to hinder, delay, or defraud creditors, a model airplane collection. Plaintiff maintains the collection is worth more than $8,000.00 and that he did not list it as an asset in his schedules. Plaintiff is correct that Debtor did not individually list his model airplane collection in his schedules, but the trustee soon became aware of the collection because he noted at the first creditors meeting on October 25, 1996, that he intended to abandon all property except the model airplane collection. Subsequently, the trustee filed a notice of intent to abandon that asset as he had inspected the collection and determined it was of insufficient value to produce any funds for creditors.

As to the issue as to the value of the collection, Plaintiff presented evidence that when the parties obtained the loan from Beneficial Missouri in March, 1995, Debtor listed his model plane collection as collateral to secure the loan and valued it at $7,500 (market value) to $10,000 (replacement value) at that time. Plaintiff implies that this indicates Debtor has concealed part of the collection so that the trustee would place a lower value on it. Unfortunately, the only evidence this Court has as to the value of the collection is the parties' conflicting testimony as to value, the trustee's determination, and the Beneficial Missouri security agreement under which the airplane collection was valued at $7,500 to $10,000 and placed as collateral. The Court examined that security agreement (on which Plaintiff primarily relies), and finds it supports Debtor's testimony that the value of the collection was inflated for purposes of obtaining the loan. All of the other personal property listed on that document appear to be inflated as well, or at least were listed in terms of retail or replacement value as opposed to liquidation value. Almost all of the entries were listed as having the same "market value" as the "replacement value." For instance, Debtor listed "60 CDS" at a market value of $800.00 and a replacement value of $800.00; he listed "50 [video] tapes" at a market value of $500.00 and a replacement value of $500.00; he listed his computer CPU/keyboard/disk drive at a market value of $650.00 and a replacement value of $650.00; and he listed his lawn mower at a market value of $200.00 and a replacement value of $200.00. In fact, nearly all of the entries have the same market and replacement values. It is common knowledge that items such as these do not have the same market value as their replacement value. The Court finds that the same is true of his listed model airplane collection. At least

Plaintiff did not present any evidence, in the form of an appraisal or anything else, that the planes are worth more than the trustee has determined or that some of them may have been concealed. As a result, the Court finds Debtor has not concealed or transferred any property within the year preceding his petition in bankruptcy, and therefore should not be denied discharge under § 727(a)(2).

■■■■■ Next Plaintiff points to the Royal Waterbed debt discussed briefly above. The security agreement on the waterbed is signed in both Debtor's name and Plaintiff's name. Plaintiff asserts that the signature of her name was not her signature. Debtor admitted in his answer and at the hearing that he did in fact sign her name to the agreement but that he did so while the parties were still together and that he had her permission to do so. The date of the agreement does indicate that it was signed before the parties separated and the waterbed is listed on Debtor's schedules as an asset. Plaintiff did not challenge or provide rebuttal evidence as to Debtor's response that she had given him permission to sign the security agreement. The standard of proof in a § 727(a) action is the preponderance of the evidence standard, *Barclays/Am. Business Credit v. Adams (In re Adams)*, 31 F.3d 389 (6th Cir.Tenn.1994), and the Court does not lightly deny discharge under § 727(a). The Court simply does not believe it has before it enough evidence to determine whether in fact Debtor had Plaintiff's permission to sign the agreement. Moreover, this raises many other issues, including agency, which were not addressed by the parties. In any event, Debtor has entered a reaffirmation agreement with Royal Waterbeds. If Debtor defaults on the reaffirmation agreement, and Royal Waterbeds continues to pursue Plaintiff on the agreement, it will then be necessary for this Court or the state court to determine whether Plaintiff had given her permission to sign the agreement. In sum, the Court finds that under the circumstances of this case, Debtor's act of signing his wife's name to a waterbed security agreement, at a time while they were still married and when he professes he had her permission to do so, does not warrant § 727 denial of discharge.

■■■ Plaintiff then points to two debts listed in Debtor's schedules which are nonexistent or exaggerated and asserts he should be denied discharge under § 727(a)(4)(A) in that those debts were knowingly and fraudulently made in connection with his Chapter 7 petition. First, Debtor listed a $10,000 debt to Plaintiff in his schedules. She states he does not owe her anything and implies it is listed for the purpose of exaggerating his debts. She also states that the debt listed to United Acceptance Corporation in the amount of $5,700 is grossly exaggerated and that the amount owed to that creditor is only approximately $3,000.

As to the $10,000 debt to Plaintiff, Debtor answered that he listed the debt as an estimated amount for any monies Plaintiff would claim he owes her. At the hearing, he indicated that the debt was listed so as to represent the debts on which they were co-liable and was intended to represent any claim she would have against him if the co-liable debts were discharged. Debtor is correct that failure to list Plaintiff as a creditor may have prevented a potential claim she has against him from being discharged, even if any potential claim she might have against him is unliquidated or contingent. While the Court believes the schedule may need to be amended to more accurately reflect potential claims Plaintiff has against Debtor, the Court is satisfied with Debtor's response for purposes of § 727 denial of discharge.

As to the overstated debt to United Acceptance Corporation, Debtor conceded in his answer that it was an unintentional miscalculation of the debt owed (they listed the original amount of the loan rather than the balance owing on it) and that they would file an amended Schedule F showing the correct amount of $3,000. The Court is also satisfied with that response, although Debtor has not yet filed an amended schedule to reflect that correction. The Court suggests this be done as soon as possible.

■ Finally, Plaintiff points to the debt listed in Debtor's schedules to the Internal Revenue Service in the amount of $408.31. Plaintiff claims that debt represents their joint taxes which they agreed under the separation agreement to each pay half. Plaintiff states in her complaint that she had already given her half of that debt to the debtor and that he was supposed to forward it to the IRS along with his half. Plaintiff states he may or may not have forwarded her share to the IRS. Likewise, Plaintiff also suggests that, as provided in the separation agreement, she has been forwarding her $32.00 monthly payment to the debtor who was supposed to pay the Nations Bank Mastercard debt, but that he has converted her monthly $32.00 payment to his own use rather than paying the Mastercard debt.

Debtor responds to these charges by stating that the debt to the IRS is nondischargeable and that he is fully responsible for that debt. This is correct. He fully denies Plaintiff's allegation that he has converted the $32.00 per month to his own use and declares he did forward any and all payments Plaintiff paid to him for the Nations Bank Mastercard. Plaintiff presented no evidence to the contrary. The separation agreement does not indicate what the amount of the debt was at the time of the dissolution, and no statements or other evidence as to balance or payments was introduced, so the Court finds Plaintiff did not meet her burden of demonstrating he has fraudulently converted her payments to his own use.

### CONCLUSION

For the foregoing reasons, the Court finds that the debts which Debtor agreed to pay under the separation agreement and decree of dissolution to be dischargeable under § 523(a)(15)(A). Further, Plaintiff's request that Debtor be denied a discharge pursuant to § 727 is DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Fed.R.Bankr.P. 7052.

So ORDERED.