In re Eli BARON, Debtor.

Mary Armbruster Baron, Plaintiff,

v.

Eli Baron, Defendant.

Bankruptcy No. 00–00867–9P7.
Adversary No. 00–771.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Jan. 4, 2002.

Ronald L. Stetler, Naples, FL, for plaintiff.

Roger L. Waltemyer, Ft. Myers, FL, for defendant.

### ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

(Doc. Nos. 31 and 33)

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration is a sequel to the dissolution of marriage proceeding of Eli Baron (Debtor) and his former spouse, Mary Armbruster Baron (Ms. Baron), which was concluded on January 15 1996, with the entry of a Final Judgment of Dissolution of Marriage (Final Judgment), entered by the Circuit Court of Collier County, Florida.

The immediate matters under consideration are the following: (1) a Motion for Summary Judgment, filed by the Debtor and (2) a Motion for Summary Judgment, filed by Ms. Baron. The Motions are filed in an adversary proceeding (Adv. No. 00–771), commenced by a Complaint, filed by Ms. Baron and naming the Debtor as the defendant. Ms Baron has sought a determination in Count I of the Complaint that the unspecified obligations set forth in a certain Mediation Agreement, approved and incorporated in the Final Judgment, are in the nature of support and should be determined by this Court to be nondischargeable. Although the basis for the relief sought is not specified, it is not disputed that it is based on Section 523(a)(5) of the Bankruptcy Code. The claim of nondischargeability in Count II of the Complaint is based on Section 523(a)(15) of the Code, and claims that certain unspecified sums set forth in the Mediation Agreement are in the nature of property settlement (sic) and should be declared nondischargeable.

In due course, the Debtor, rather than attacking the sufficiency of the allegations as pled, filed a perfunctory answer admitting and denying some of the allegations set forth in Complaint, without specifically addressing the allegations in both Counts, but merely referring to certain paragraphs in both Counts.

On May 10, 2001, this Court entered an Order scheduling the Final Evidentiary Hearing for June 13, 2001. On May 15, 2001, prior to the scheduled trial, the Debtor filed a Motion to Dismiss Count II of the Complaint. This was granted with the entry of an Order dated June 26, 2001. This leaves for consideration the claim set forth in Count I of the Complaint, based on Section 523(a)(5) of the Code.

The first Motion for Summary Judgment was filed by the Debtor on October 18, 2001. In support of his Motion, the Debtor filed Defendant's Affidavit in Support of Defendant's Motion for Summary Judgment (his own Affidavit). Attached to the Affidavit, is (a) the Mediation Agreement, (b) the Final Judgment of Dissolution of Marriage, (c) Notice of Filing and Husband's Temporary Financial Affidavit, (d) a copy of check in the amount of $500,000, payable to Mary Armbruster and drawn on the trust account of the law firm of Woodward, Pires, Lombardo, P.A., and

(e) a closing statement with respect to the sale of a condominium. There is no contention in the Motion that there are no genuine issues of material facts, merely that the remaining obligation, fixed by the Mediation Agreement, should be discharged and the "Plaintiff's Complaint" be dismissed.

On October 26, 2001, Ms. Baron filed her Motion for Summary Judgment. In her Motion, she contends that there are no genuine issues of facts, that the following obligations of the Debtor, fixed by the Mediation Agreement, are in the nature of support, and therefore, they are nondischargeable pursuant to Section 523(a)(5) of the Code. The obligations that she claims are in the nature of support are the following:

(a) monthly support of 4,000;

(b) $500,000 to be paid at four (4%) percent interest in lump sum payments of $50,000 a year with a balloon payment of all remaining sums in five (5) years;

(c) lump sum payments for two years of $238,615 per year; and

(d) a home for Ms. Baron and the children.

In support of her Motion, she filed three exhibits: (1) her own Affidavit (Exh. B to her Motion), (2) the Affidavit of Christopher Lombardo (Exh. A to her Motion) and (3) the Mediation Agreement (Exh. C to her Motion). In addition, attached as exhibits to the affidavits are the following documents: (a) the Husband's Temporary Financial Affidavit, (b) the Notice of Filing of the Husband's Temporary Financial Affidavit, (c) the Financial Affidavit, and (d) the Notice of Filing the Financial Affidavit. These are the relevant documents that reveal the following facts that are without dispute.

The Debtor and his ex-wife, Ms. Baron, were married in 1984. At the time of their divorce (in 1995), there were three children from the marriage, ages 9, 7 and 5 respectively. As part of the dissolution of marriage proceeding in 1995, the parties agreed to resolve their differences through mediation. On November 13, 1995, the Mediator filed and submitted a mediation agreement (Mediation Agreement) to the Circuit Court where the divorce proceeding was pending. On January 25, 1996, the Circuit Court approved the Mediation Agreement and incorporated the same into the Final Judgment.

The Mediation Agreement provided, inter alia, in Paragraph (1) that the Debtor shall purchase a home for Ms. Baron which shall be free and clear of any liens for a purchase price not to exceed $450,000, or in the event a home is not purchased to pay Ms. Baron $450,000 in cash.

In Paragraph (2) of the Mediation Agreement, the Debtor was required to make a temporary support in an unspecified amount which, apparently, had been fixed before the Circuit Court until the home was purchased, or if not purchased the sum of $450,000 was paid.

Paragraph (3) of the Mediation Agreement provided an extensive detailed provision for child support and required the Debtor to pay $3,000 per month as child support until each child attained the age of 18, or is between the age of 18 and 19 and still in high school, up to graduation or the 19th birthday, whichever last occurs. In addition, the Debtor was required to pay the sums necessary for numerous items, including clothing, medical and dental insurance, preschool and school expenses, and college education, which includes tuition, room and board, fees, books and supplies and reasonable transportation.

To assure that these provisions for the children are met, the Debtor was required

to maintain a life insurance policy in the amount sufficient to provide the necessary support for the children for the items as outlined above. In addition, the Debtor was also required to maintain life insurance that was in effect at that time on the life of the children.

Paragraph (4) of the Mediation Agreement entitled "Alimony" set forth the following provisions. The Debtor was required to pay Ms. Baron a non-modifiable permanent alimony in the amount of $1,000 per month, which would terminate only upon the wife's remarriage or death, the husband's death, or 13 years from the date of the Mediation Agreement, whichever occurs first. This obligation shall start once Ms. Baron moves into the house described earlier or receives the $450,000, but in no event later than 6 months from the date of the Mediation Agreement. The alimony shall be deductible to the husband and taxable to the wife.

Paragraph (5) of the Mediation Agreement sets forth specific provisions as to the disposition of personal properties, including a 1994 Plymouth Voyager automobile.

Paragraph (8) entitled "equitable distribution" requires the Debtor to pay to Ms. Baron any refund he might receive from the IRS concerning the 1992 tax returns based on the net operating losses. In the event the refund is not paid by the IRS, or the Debtor fails to request a refund, then the Debtor is required to pay to the wife the net operating loss of $477,231.00 as follows: (1) on July 1, 1997, the sum of $238,615 and (2) on July 1, 1998, in the same amount.

In addition, as equitable distribution, the Debtor is required to pay Ms. Baron $500,000 with interest at the rate of four (4%) percent per annum for five (5) years in the following installments: (1) $2,000 toward principal and interest commencing six months from the date of the agreement or closing to the residence to be purchased, or if not purchased the receipt of $450,000 whichever occurred first; (2) on January 1, 1997, $50,000 for principal reduction and thereafter annual payments on January of each year in the amount of $50,000 per year, until the entire $500,000, plus accrued interest has been paid in full. If there is an amount that remains unpaid at the end of five years, the Debtor shall pay, in full, the balloon balance of the remaining and outstanding amount of principal and interest.

Paragraph (9) the Mediation Agreement provides that the husband will not attempt to discharge any of his obligations to the wife in bankruptcy. The Debtor stipulated that the alimony amount set forth in Paragraph (8) is premised on the assumption that the wife will receive her equitable distribution in full. The Debtor further acknowledged that the wife's support needs and of the children are being *partially met* by the equitable distribution award.

These are basically the essential features of the Mediation Agreement that have been approved by the Circuit Court. And, according to the Motion for Summary Judgment filed by Ms. Baron, the following amounts shall be excepted from the overall protection of the bankruptcy discharge pursuant to Section 523(a)(5) of the Code:

a. monthly support of $4,000;

b. $500,000 to be paid in five years;

c. lump sum support payments for 2 years in the amount of $238,615 per year; and

d. either the purchase of a home or if not purchased the sum of $450,000.

Paragraph (5) provides that these provisions purportedly represent the clear intent of the parties and they are in the

nature of support and not equitable distribution.

It appears from the Affidavit filed by the Debtor, in support of his Motion for Summary Judgment, that at the time of the divorce, he had no income, had expenses of $11,145.00 per month, and had liabilities exceeding his assets by more than $7 million. The Debtor, in his Affidavit, further states that in September of 1999, he paid Ms. Baron the $500,000 pursuant to the Mediation Agreement.

In addition, in 1998 the Debtor gave the proceeds of the sale of a lot in the amount of $205,000 to Ms. Baron as distribution of assets, not as support. Moreover, counsel for Ms. Baron purchased mortgages encumbering a certain condominium unit owned by the Debtor, completed the foreclosure and sold the unit for $998,000 and received $933,314 as net proceeds.

In her Affidavit filed in support of her Motion for Summary Judgment, Ms. Baron basically reiterates that the provisions in the Mediation Agreement were in the nature of support, notwithstanding the characterization of certain obligations as equitable distribution; that it was clearly always the intent of the parties that the provisions identified earlier were in the nature of support, and were only labeled as equitable distribution at the request of the Debtor who did not want to have the obligation be modifiable and did not want any tax consequences to flow from the support payments, and wanted a definite termination date for the obligations.

She also concedes, however, that the obligation imposed on the Debtor, in the amount set forth in Paragraph (8) of $500,000, was made on the assumption that she will receive her equitable distribution in its entirety. She also concedes that the $500,000 award would meet, in part, the support of her and the children. In her Affidavit, she then concludes that the total amount of support which should be excluded from the overall protection of the discharge $1,058,582 plus interest from June 13, 2001, to the present.

Ms. Baron does not acknowledge in her Affidavit any of the payments claimed to have been made by the Debtor in his Affidavit, particularly the sum of $500,000 paid to her on September 3, 1999, which allegation is supported by a copy of a check attached thereto. She also does not acknowledge the receipt of the sum of $205,000 from the proceeds of the sale of a lot and the sum of $933,314 received from the foreclosure of the condominium unit owned by the Debtor in Naples.

These are basically the facts that are undisputed, and this leaves for consideration the respective positions of the parties concerning a determination by this Court of the true nature of the obligations, and particularly the binding effect of the Mediation Agreement.

Chapter 7 of the Bankruptcy Code provides for a general discharge to a debtor from "all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). There are exceptions to this general discharge, including Section 523(a)(5), which provides as follows:

> A discharge under section 727 ... does not discharge an individual debtor from any debt—to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, ... but not to the extent that—
>
> . . . .
>
> (B) such a debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5). Pursuant to Section 523(a)(5), "a given domestic obligation is not dischargeable if it is 'actually in the nature of' alimony, maintenance, or support." *In re Harrell,* 754 F.2d 902, 904 (11th Cir.1985).

■ In general terms of the application of state law to Section 523(a)(5), case law is clear that bankruptcy courts are not bound to the label attached by the divorce court in the context of a written agreement or judgment. *In re Strickland,* 90 F.3d 444 (11th Cir.1996)(holding that although federal law controls, state law provides guidance in determining whether the obligation should be considered "support" under § 523(a)(5)). *See also In re Goin,* 808 F.2d 1391, 1392 (10th Cir.1987)(bankruptcy courts not bound by state laws defining an item as maintenance or property settlement, nor are they bound to accept divorce decree's characterization of award); *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1057 (8th Cir.1983)(bankruptcy courts are not bound by state law or by the divorce decree definitions or characterizations of an item as either maintenance or property settlement).

■ A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony. *Cummings v. Cummings,* 244 F.3d 1263, 1265 (11th Cir. 2001) (citations omitted). The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support. *Id.*

In the case of *Horton v. Horton (In re Horton),* 69 B.R. 42 (Bankr.E.D.Mo.1986), the former wife filed a complaint seeking to except from discharge certain of debtor's obligations arising from state court decree dissolving their marriage. The bankruptcy court held that the debtor's obligation to indemnify and hold former spouse harmless from loss or expense was in the nature of alimony and support, and not dischargeable. The bankruptcy court, in examining the "Separation Agreement" specifically quoted the unambiguous language of the agreement wherein it stated "... respondent understand that this indemnification agreement is non-dischargeable in bankruptcy." The bankruptcy court determined that while the state court characterization does not bind the bankruptcy court, where "it is unequivocal and there is no evidence whatsoever that the indemnity and hold harmless promise had any other purpose, it is sufficient for a declaration of nondischargeability." *Horton,* 69 B.R. at 45. *See also Ianke v. Ianke (In re Ianke),* 185 B.R. 297 (Bankr. E.D.Mo.1995). In *Ianke,* the Separation Agreement, in two distinct instances specifically stated "Respondent is prohibited from discharging Respondent's obligations to Petitioner through bankruptcy." The bankruptcy court determined that this specific reference is only one of several requirements to hold a debt nondischargeable under Section 523(a)(5). *Ianke,* 185 B.R. at 299. The bankruptcy court, nevertheless, determined that the debts were nondischargeable as to the former-spouse, as a result of their characterization as alimony, maintenance, or support. *Id.* at 301. *See also Krein v. Hanagan (In re Krein),* 230 B.R. 379 (Bankr.N.D.Iowa 1999)(bankruptcy court determined that debt was nondischargeable, based upon language of parties, specific reference that debt would be nondischargeable, coupled with other factors).

However, courts are hardly in agreement with the impact of language that specifically terms a debt as nondischargeable. In the case of *Miller v. Gentry (In re Miller),* 169 B.R. 715 (D.Kan.1994), *aff'd,* 55 F.3d 1487 (10th Cir.1995), *cert. denied,* 516 U.S. 916, 116 S.Ct. 305, 133

L.Ed.2d 210 (1995), the bankruptcy court determined that notwithstanding the express language in the judgment that stated "being in the nature of support on behalf of the parties' minor children, is specifically not dischargeable in bankruptcy," the fees incurred by a guardian ad litem were dischargeable. Although the district court reversed the bankruptcy court on other grounds, the district court confirmed that the bankruptcy court did not err in its conclusion that the state court's determination of the issue of dischargeability bound it to that same determination. *Miller*, 169 B.R. at 719. *See also, In re MacDonald*, 194 B.R. 283 (Bankr.N.D.Ga. 1996)("A determination regarding dischargeability, however, cannot be made in advance of the filing a bankruptcy petition, and such a provision in a settlement agreement is unenforceable as in conflict with the purpose and policies of the bankruptcy process.")

In the Eleventh Circuit, the Court of Appeals has made it clear that the trial court must discern the intent of the parties in determining whether a particular obligation is in the nature of support regardless of the label. *Cummings*, 244 F.3d at 1266. In *Cummings*, the Eleventh Circuit vacated the judgment entered by the bankruptcy court and remanded to the bankruptcy court for reconsideration the case in light of its opinion, that courts must take into account the intent of the divorce court as reflected in the judgment and settlement agreement. *Supra*, at 1267.

In light of the foregoing authority and based upon the pleadings of record, this Court is satisfied that it was the intent of the parties, at the time of the execution of the Mediation Agreement and the entry of the Final Judgment, for child support payments in the amount of $3,000, and all other related child support, alimony payments in the amount of $1,000, and the purchase of a house to be in the nature of alimony, maintenance, or support. However, with respect to the $500,000 payment and the two $238,615 payments, this Court, cannot on summary judgment, determine the intent of the parties with respect to whether or not the "equitable distribution" is in the nature of alimony, maintenance, or support. Moreover, it appears from the Affidavit of the Debtor, which is not contradicted by Ms. Baron, that Ms. Baron received far more monies from the Debtor than any provision set forth in the Mediation Agreement (she appears to have received $500,000, $205,000, and $933,314). Although not well articulated, it could be deemed that these payments, in the respective amounts of $500,000, $205,000 and $933,314 are in partial satisfaction of the obligations set forth in the Mediation Agreement. The record is not sufficient for this Court to make a finding regarding the nature of these payments. Therefore, this Court shall set for final evidentiary hearing the issue of whether or not the remaining obligations are in the nature of alimony, maintenance, or support and whether or not the Debtor's purported payments are in satisfaction of those obligations. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion For Summary Judgment, filed by the Debtor be, and the same is hereby denied. Summary judgment is specifically denied with respect to the following obligations:

a) all payments of child support and related support, as referenced in Paragraph 3 of the Mediation Agreement;

b) payments of alimony to Ms. Baron, as referenced in Paragraph 4 of the Mediation Agreement; and

c) the purchase of a house, as referenced in Paragraph 1 of the Mediation Agreement.

The foregoing obligations are determined to be in the nature of alimony, maintenance, or support and therefore, nondischargeable. With respect to the remaining obligations, summary judgment is denied and the matter shall be set for final evidentiary hearing. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment, filed by Ms. Baron be, and the same is hereby granted in part and denied in part. Summary judgment is granted to Mr. Baron with respect to the following obligations:

a) all payments of child support and related support, as referenced in Paragraph 3 of the Mediation Agreement;

b) payments of alimony to Ms. Baron, as referenced in Paragraph 4 of the Mediation Agreement; and

c) the purchase of a house, as referenced in Paragraph 1 of the Mediation Agreement.

The foregoing obligations are determined to be in the nature of alimony, maintenance, or support and therefore, nondischargeable. This Court shall enter a separate partial final judgment in favor of Ms. Baron and against the Debtor. With respect to the remaining obligations, summary judgment is denied. It is further

ORDERED, ADJUDGED AND DECREED that a pre-trial conference shall be held on January 31, 2002, beginning at 10:00 a.m. at the United States Bankruptcy Courthouse, Fort Myers, Federal Building and Federal Courthouse, Room 4–117, Courtroom D, 2110 First Street, Fort Myers, Florida, to consider the matters specifically denied herein.