In re Anthony MINESAL, Debtor.

Henry J. VANDENBOGART, Sandra Jarvis and Victor Stanley, Plaintiffs,

v.

Anthony MINESAL, Defendant.

Bankruptcy No. 85–01045.
Adv. No. 85–0476.

United States Bankruptcy Court,
E.D. Wisconsin.

Jan. 15, 1988.

Carlton Roffa, Milwaukee, Wis., for plaintiffs.

Lawrence A. Willenson, Milwaukee, Wis., for defendant-debtor.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The plaintiffs [1], former employees of Anthony Minesal ("Minesal" or "debtor"), have objected to his discharge based upon the following alternative grounds: 11 U.S.C. § 727(a)(2), (3) and (5).[2] A trial was held, and it was concluded on December 4, 1987.

Minesal has been in the trucking business since 1949, primarily engaged in the hauling of dirt. He has generally worked as a sole proprietor and has employed up to seven employees when needed. A review of Minesal's bankruptcy proceedings leading up to this adversary case is appropriate so as to place this matter in its proper context.

On April 18, 1984, Minesal filed a petition under chapter 13 of the Bankruptcy Code. Several objections to confirmation of his chapter 13 plan were filed. At a hearing held on October 9, 1984 before the Hon. Dale E. Ihlenfeldt on the objection by F &

---

1. At the outset of the trial, without objection, the court granted the motion of an additional plaintiff, John Reichkoff, to be dismissed from the case.

2. Section 727(a) of the Bankruptcy Code in pertinent parts states—

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

. . . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

. . . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

M Bank to confirmation, an order denying the confirmation and dismissing the chapter 13 case was entered. The order recited in part as follows:

"The debtor does not have any type of records showing cash receipts and cash disbursements, and is unable to demonstrate that he can fund a plan calling for $5,000 a month.

... the court has been provided with no accurate information regarding the debtor's receipts and expenses.

... In the event such information indicates the debtor is in a position to propose a viable plan, he can always file another petition under chapter 13. If, however, he fails to get his bookkeeping and accounting arrangements in order, any such subsequent chapter 13 case will meet the same fate as this case presently before the court."

On March 29, 1985, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against the debtor by the same persons who are the plaintiffs in this adversary case. The involuntary petition was initially contested by the debtor. At a hearing on May 10, 1985 before Judge Ihlenfeldt, the debtor said he needed time to assemble his records and would consent to an order for relief within the next 30 days. Alternatively, the parties agreed that the court could enter an order for relief under chapter 7, effective June 10, 1985. When the debtor did not voluntarily consent, an order for relief was entered as of June 10, 1985. Thereafter, on December 5, 1985, this adversary case was commenced.

The grounds set forth by the plaintiffs in support of a denial of discharge are:

1. Minesal's failure to keep or preserve books of account or records from which his financial condition and business transactions might be ascertained [§ 727(a)(3)].

2. Minesal's failure to explain satisfactorily any losses of assets or deficiency of assets to meet liabilities [§ 727(a)(5)].

3. Minesal's transfer, removal or concealment of assets [§ 727(a)(2)].

Testimony, exhibits and court records and proceedings collectively reveal blatant inconsistencies and inaccurate testimony on the part of Minesal. They also demonstrate that his books and records are virtually nonexistent and, to the extent they do exist, are woefully deficient.

The following are some examples of why, due to Minesal's actions and his inadequate books and records, it is impossible for Minesal's creditors to accurately trace his financial history, business transactions and assets and liabilities as of the date of the filing of the involuntary chapter 7 petition against him.

### Anthony Minesal Trucking, Inc.

Anthony Minesal Trucking, Inc. is a corporation that was formed by Minesal in December, 1984. Nothing in the debtor's bankruptcy schedules (either as originally filed or thereafter amended) disclosed that this corporation even existed. Minesal testified that the corporation was owned by Wisconsin Cabinet Shop, Inc., a separate corporation which was owned by Henry R. Marohl, a long-time friend of Minesal. Minesal also stated that Anthony Minesal Trucking, Inc. had been organized as part of a plan devised to enable him to retain the use of four vehicles which were in the process of being repossessed. In a letter dated October 11, 1985 to the trustee, John Scaffidi, Marohl's attorney, John Becker, refuted Minesal's version as to the ownership of the stock in Anthony Minesal Trucking, Inc. Atty Becker stated that the stock was owned by Minesal and had only been given as collateral to Wisconsin Cabinet Shop, Inc.

### November, 1984 Agreement Between Minesal and Wisconsin Cabinet Shop, Inc.

This agreement between the parties involved a sale from Minesal to Wisconsin Cabinet Shop, Inc. of the following four vehicles: 1981 Western Star, 1980 Western Star, 1979 Freightliner, 1970 International Harvestor truck. The combined value of these vehicles at the time of the agreement, according to the debtor, was nearly

$70,000.[3] The plaintiffs maintain the total combined value was substantially higher. The agreement contained a lease back of these vehicles from Wisconsin Cabinet Shop, Inc. to Minesal.

Minesal failed to disclose this sale and lease back in his original schedules. The agreement stated that the vehicles were to have been sold to Wisconsin Cabinet Shop, Inc. but that sale never occurred. The titles were never transferred to Wisconsin Cabinet Shop, Inc. The records of the Wisconsin Department of Transportation show that on March 7, 1985 (approximately three weeks before the involuntary petition was filed), the certificates of title for these four vehicles were then in Minesal's name, and that he then transferred them to Anthony Minesal Trucking, Inc. Wisconsin Cabinet Shop, Inc. never held title.

Minesal could not provide any satisfactory explanation as to why that happened, nor could he explain why the agreement was not disclosed in the original bankruptcy schedules.[4] Minesal furnished no documentary evidence, such as cancelled checks, invoices, purchase orders, bills of sale, journals or ledgers, to clarify the matter.

The November, 1984 agreement obligated Minesal to pay to Wisconsin Cabinet Shop, Inc. $94,258.20 over 30 months at the rate of $3,141.94 per month, and Minesal's Amended Schedule B–3 disclosed that, as of the date of the filing of the involuntary petition, there was a balance due under the lease of $81,690.24. This indicated he had paid slightly under $13,000 under the terms of the lease. Minesal testified in a deposition that he did not pay the $13,000, but he never revealed what, if anything, he did pay in connection with the lease. His lack of adequate records makes it impossible to determine the true facts of this transaction.

**3.** This combined value of $70,000 is broken down as follows: 1981 Western Star—$28,603; 1980 Western Star—$20,341; 1979 Freightliner —$17,949; 1970 International truck—$2,500.

**4.** Although the agreement had been omitted from the original schedules, apparently its existence was later disclosed in an amended Sched-

### Undisclosed Assets and Transfers of Assets by Debtor

Many vehicles, which were not disclosed in the bankruptcy schedules, were observed by witnesses, plaintiffs Victor Stanley and his wife, Sandra Stanley (formerly Sandra Jarvis), on the premises of the debtor both before and after the filing of the involuntary petition on March 29, 1985. As was previously noted, both Mr. and Mrs. Stanley formerly worked for Minesal. Minesal attempted to explain this by stating that: (1) some vehicles were not owned by him, (2) some vehicles were junked, and (3) some vehicles subject to liens were repossessed. His responses were, at best, vague and unsubstantiated by satisfactory documentary proof.

Several key portions of Minesal's testimony were refuted by the testimony of Susan Elskamp, a representative of the Wisconsin Department of Transportation. Victor Stanley testified that he saw a 1973 Fruehauf semi-dump trailer, which he had valued at $10,000, on the debtor's premises in March, 1985. His testimony was in direct conflict with that of the debtor. Minesal said he never owned this vehicle, but the records of the Wisconsin Department of Transportation disclose that since January 8, 1985 a Fruehauf semi-dump trailer has been owned by Anthony Minesal Trucking, Inc. with Anthony Minesal listed on the certificate of title as lessee.

The debtor testified that in 1984 he sold a 1963 Buick Riviera automobile to Joe Kafka. Sandra Stanley testified that in March, 1985, she observed this vehicle on the debtor's premises. The Wisconsin Department of Transportation records reveal that the transfer to Mr. Kafka occurred on May 1, 1985, which is in direct contradiction to the debtor's testimony.

§ 727(a)(3) provides that a debtor shall receive a discharge unless the debtor has

ule B–3 which Minesal prepared after meeting with Trustee Scaffidi and in response to Trustee Scaffidi's request that he do so. Actually, Amended Schedule B–3 never was filed with the United States Bankruptcy Clerk. However, it was given to Trustee Scaffidi and does appear as part of the pretrial report in this case.

concealed, destroyed, falsified or failed to keep or preserve records from which the debtor's financial condition or business transactions may be ascertained. The rationale for this section is that creditors and the trustee in bankruptcy must be provided with dependable information. *Broad National Bank v. Kadison*, 26 B.R. 1015 (D.C.N.J.1983); *In re Tackett*, 67 B.R. 354 (Bankr.E.D.Tenn.1986).

A court must look at the particular circumstances of each case in the light of the the purpose behind § 727(a)(3). It should consider the following factors: whether a debtor was engaged in business and, if so, the complexity and volume of the business; the amount of debtor's obligations; whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; the debtor's education, business experience and sophistication; the customary business practices for record keeping in the debtor's type of business; the degree of accuracy disclosed by the debtor's existing books and records; the extent of any egregious conduct on the debtor's part; and the debtor's courtroom demeanor. *In re McCall*, 76 B.R. 490 (Bankr.E.D.Pa.1987). Intent is not a prerequisite element under § 727(a)(3). *In re Shapiro*, 59 B.R. 844 (Bankr.E.D.N.Y. 1986). D. Cowans, *Bankruptcy Law and Practice*, § 5.31 (interim ed. 1983), asserts:

"A number of debtors and their attorneys have the mistaken notion that all they need do is show some records. The standard is rather whether the books reasonably reflect status and history."

Minesal is not a novice in the business world. He ran his own trucking business for over 34 years and annually grossed well into six figures. His debts exceed $280,000. His actions in manipulating to keep possession of the four vehicles that were threatened with repossession demonstrate sophistication—not simplicity. Furthermore, Minesal's testimony on the witness stand lacked credibility. It was replete with evasive and unresponsive answers.

The trustee, John Scaffidi, testified that Minesal was "a poor record keeper" and that he presented "very little" books and records. Minesal said that he kept his records in a pile. At the end of each year, he would bring them to his attorney, Lawrence Willenson, for income tax preparation. Minesal knew the importance of and need for keeping adequate books and records, yet he failed to do so. An Internal Revenue audit of his 1983 income tax return resulted in an additional assessment of approximately $9,000. As previously noted, inadequate records resulted in a denial of his chapter 13 confirmation.

Minesal stated that he had burned records both before and after the filing of the involuntary petition, his only justification being that he was forced to move from his home by reason of a mortgage foreclosure. Although warned by Atty Willenson of the consequences that would occur if he failed to keep adequate books and records, he chose to ignore that warning. Atty Willenson told him to obtain a bookkeeper and said that:

"He had no books, no records. For years, I was telling him to get a bookkeeper, but this is the way he did it for at least five years before this petition was filed. He'd just bring in boxes of papers, paper bags full papers." (Tr. of excerpt of testimony of Anthony Minesal, Dec. 4, 1987, p. 8)

A debtor "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *In re Martin*, 698 F.2d 883, 888 (7th Cir.1983). That is the precise situation that has occurred in this case, where Minesal has failed to provide books and records and has been unable to give a credible explanation of his transactions and the omission of assets from his schedules.

The court recognizes that a denial of discharge is a harsh remedy to be reserved for the truly pernicious debtor. *In re Shebel*, 54 B.R. 199, 204 (Bankr.D.Vt.1985). However, when a debtor's suspiciously vague testimony is combined with a failure to produce records that are essential to ascertain his financial condition and busi-

ness transactions, § 727(a)(3) mandates the denial of discharge.

■ § 727(a)(3) is not, as Minesal claims, a new ground introduced at the late stage of these proceedings. It was pled in the plaintiffs' complaint, and there was abundant testimony presented at the trial to support it. Minesal had ample notice and an opportunity to defend. The court also rejects Minesal's argument of lack of standing by the plaintiffs to raise that ground, in view of § 727(c)(1), which by its express terms, authorizes creditors to object to the granting of a discharge under § 727(a).

Under the facts of this case, where Minesal has been unable to provide a credible explanation for his failure to keep or preserve books and records sufficient to reconstruct his financial affairs, failure to invoke § 727(a)(3) would render it meaningless. The proof presented is clear and convincing that he has failed to meet, even minimally, the requirements of that section.

In view of this court's decision based upon § 727(a)(3), it is unnecessary to rule upon the alternative grounds for denial of discharge alleged by the plaintiffs under § 727(a)(2) and § 727(a)(5).

■ The court declines to grant the plaintiffs' request for actual attorney's fees. The defense presented by the debtor, while not persuasive, was not frivolous. The debtor had a right to a court determination even though such ruling turned out to be contrary to his position.

This decision shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.