In re Estella Andreal GRAY, Debtor.

Leon Gray, Plaintiff,

v.

Estella Andreal Gray, Defendant.

Bankruptcy No. 02–45946.
Adversary No. 03–4055.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

June 17, 2003.

Roy B. True, Kansas City, MO, for debtor.

## MEMORANDUM OPINION
## AND ORDER

JERRY VENTERS, Bankruptcy Judge.

On January 15, 2003, Plaintiff Leon Gray, acting *pro se,* filed an Adversary Complaint against the Debtor, Estella Andreal Gray. The Complaint alleges two causes of action: (1) Objection to Discharge of the Debtor pursuant to 11 U.S.C. § 727, and in the alternative (2) to Determine Dischargeability of Certain Debts pursuant to 11 U.S.C. § 523. The Court

held a trial on this matter at the United States Courthouse in Kansas City, Missouri, on May 30, 2003, and took the matter under advisement.

Upon consideration of the pleadings, the evidence adduced at trial, and relevant law, the Court will grant the relief requested as to the Objection to Discharge pursuant to § 727 but will deny the request to Determine Dischargeability of Certain Debts pursuant to § 523.[1]

### FACTUAL BACKGROUND

The Debtor, Estella Andreal Gray ("Debtor" or "Mrs. Gray"), filed for protection under Chapter 7 of the Bankruptcy Code on October 25, 2002. Leon Gray ("Plaintiff" or "Mr. Gray"), is the former spouse of the Debtor. The Grays apparently went through an acrimonious separation and divorce proceeding that culminated in the entry of a divorce decree on November 13, 2001. (Pl.Ex. 11) Mr. Gray has raised several issues in this Adversary Proceeding, all of which basically grew out of the divorce proceedings.

The first issue involves to a credit card debt to MBNA. Pursuant to a property settlement entered into in connection with the divorce, Mrs. Gray agreed to assume responsibility for payment of a very substantial debt to MBNA. Mrs. Gray listed the debt on the bankruptcy schedules in the amount of $24,390.11, but failed to list Mr. Gray as a co-debtor on either Schedule H or Schedule F. However, Mr. Gray is listed separately as a creditor on Schedule F.[2] Mr. Gray presented evidence that showed the MBNA account to be a joint account and testified that, if this debt was discharged as to Mrs. Gray, the creditor would require him to pay the debt. (Pl. Ex. 5)[3]

The second issue relates to child support. The state court directed Mr. Gray to pay the Debtor $800.00 per month for child support, and the evidence was undisputed that Mr. Gray has been paying the required support payments. The Debtor admittedly failed to list child support in any amount on Schedule I, but she pointed out that she correspondingly did not include the expenses for her children's education and other things on Schedule J. She testified that the children's expenses equal or exceed the $800.00 a month in support payments she receives from Mr. Gray. The Debtor stated that she told her bankruptcy attorney[4] about the child support and expenses for her children but he failed to put them on her bankruptcy schedules.

The third issue raised by Mr. Gray concerns Mrs. Gray's income. On her Statement of Financial Affairs, the Debtor listed her income for 2000 as $50,000.00. The Plaintiff presented evidence to show that the Debtor actually earned $59,985.31 in 2000. (Pl.Ex. 10) The Debtor acknowledged that she had estimated her income for that year and did not place the actual amount on the Statement of Financial Af-

---

1. The following constitutes the Court's Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), and the Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2. The schedule reflects that Mr. Gray has an "indemnification claim" against Mrs. Gray with a claim of zero.

3. Exhibit 5 is a bill from MBNA to Mr. Gray. The Debtor confirmed that the account number is the same as the MBNA debt listed in her bankruptcy schedules.

4. Roy B. True represented Mrs. Gray in filing her bankruptcy petition; however, he did not represent her in this Adversary proceeding.

fairs.[5]

Fourth, Mr. Gray asserts that the Debtor incorrectly scheduled the amount of secured debt on her real property. On Schedule A, the debtor lists two properties—her current residence and a rental property located at 7200 Highland Avenue, Kansas City, Missouri (the "Highland Property"). The Debtor listed the current market value of the Highland Property as $40,000.00 and the amount of the secured debt thereon as $40,000.00. On Schedule D, James B. Nutter & Company is listed as a creditor for the Highland Property and the amount of the claim is listed as $40,000.00. At trial, the parties agreed that the actual amount owed on the Highland Property to Nutter & Company was $28,000.00, thereby resulting in equity of almost $12,000.00 in that property. The Debtor admitted the error but testified that the secured claim on the Highland Property was listed the same as the market value due to her misunderstanding of the column heading on the schedules, and that she didn't understand what she was doing when she read and signed the schedules. The Debtor also stated that the mistake was made because the last two years "had been difficult," an apparent reference to the parties' marital difficulties.[6] The Plaintiff also disputed the market value that the Debtor listed for the Highland Property; he believes that the property is worth far more but failed to adduce competent evidence to support his position. The Debtor firmly denies that the Highland Property is worth more than $40,000.00, but she did not adduce evidence to indicate a lower value.

The fifth issue raised by Mr. Gray involves the Debtor's lack of disclosures with respect to property she received as a result of the divorce proceedings. The Debtor received a qualified domestic relations order ("QDRO") representing her interest in her former husband's pension.[7] The Plaintiff presented evidence to show that Mrs. Gray received a distribution from his pension plan in June 2002 in the amount of $15,163.95. (Pl.Ex. 7) Mrs. Gray testified that she received approximately $9,000.00 from the pension plan after taxes were deducted. The Debtor also received stocks as part of the property settlement. The Debtor agreed at trial that the stocks were worth approximately $6,700.00. The Debtor testified that both the stocks and the money from the pension plan were liquidated and that she had spent all the money by August 2002 on bills and on fixing her current residence, which she purchased after the divorce. However, on the Statement of Financial Affairs, in response to Question 10 regarding transfers of property outside the ordinary course of business, the Debtor checked the box labeled "None," thereby indicating that she had not transferred any property outside the ordinary course of her business or financial affairs within one year preceding the commencement of the bankruptcy proceeding in October 2002. The Debtor also indicated, by checking the box labeled "None" on Question 11, that no financial accounts or instruments held in her name were closed, sold, or otherwise transferred

---

5. Mr. Gray produced copies of two W–2s and a 1099–Misc that show that the Debtor earned $59,985.31 in 2000, according to the Court's calculations, rather than $59,973.00 which is handwritten on the exhibit; however, the Court does not find this misrepresentation significant.

6. The hard feelings and animosities of the parties were apparent. Mrs. Gray testified that she and Mr. Gray are unable to talk civilly to each other, and thus all communications are conducted via email.

7. The state court, pursuant to the parties' property settlement, awarded the Debtor 15% of her ex-husband's pension.

within one year of the bankruptcy filing. The Debtor has not amended her bankruptcy schedules or Statement of Financial Affairs, although she readily admits that they are incorrect.

Finally, Mr. Gray alleges in his Complaint that the Debtor had an improper motive for filing her bankruptcy case and that she filed bankruptcy to avoid paying her obligation to MBNA. Mr. Gray also charges that the Debtor failed to fully disclose her financial condition, misrepresented her current and potential income, misrepresented her indebtedness, misrepresented her assets, and made various misrepresentations on her Statement of Financial Affairs. At the close of his case in chief, Mr. Gray suggested to the Court that the Court could order the Debtor to quit claim the Highland Property to him so that he could use the equity in the property to pay a part of the MBNA debt.

## DISCUSSION

 The Plaintiff seeks relief under 11 U.S.C. §§ 727(a)(4) and 727(a)(5) or in the alternative under § 523(a)(15). One of the primary purposes of the Bankruptcy Code is to facilitate a debtor's "fresh start." To achieve that goal, the discharge provisions are construed liberally in favor of the debtor and strictly against the objecting creditor or trustee. *In re Stanke,* 234 B.R. 449, 456 (Bankr.W.D.Mo.1999). To prevail under any of these Code sections, the Plaintiff must prove the elements therein by a preponderance of the evidence. *Kirchner v. Kirchner (In re Kirchner),* 206 B.R. 965, 973 (Bankr. W.D.Mo.1997) (standard of proof in a § 727(a) action is the preponderance of the

evidence standard, citing *Barclays/Am. Business Credit v. Adams (In re Adams),* 31 F.3d 389 (6th Cir.Tenn.1994)); *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (standard of proof in § 523 action is the preponderance of the evidence standard).

 Before proceeding to a discussion of the legal issues, the Court must address certain procedural difficulties presented in this case. The first is that a discharge was inadvertently entered in the Debtor's main case on March 24, 2003, although the Plaintiff's Complaint was timely filed and was pending at the time. The discharge should have been suspended pending the outcome of this Adversary Proceeding. Therefore, the Court will set aside the Debtor's discharge and vacate the March 24, 2003, text entry (Document # 13 in Case No. 02–45946). The second procedural hurdle is that the Defendant did not file an Answer to the Plaintiff's Complaint. At trial, counsel for the Defendant stated that he thought an Answer was filed, although no proof or copy of the Answer was presented at trial and the Clerk's Office does not have a record of an Answer ever being filed. However, the Plaintiff, acting *pro se,* elected to proceed and present his case to the Court, even though an Answer was not filed and all of his allegations could have been deemed admitted. Therefore, the Court will rule the matter on the merits.

### A. *Violation of Section 727(a)(4)(A)* [8]

 To deny a debtor a discharge under § 727(a)(4)(A), for making a false oath or account in a bankruptcy proceeding, the false statement must be both ma-

---

8. Section 727(a)(4)(A) provides:
 (a) The court shall grant the debtor a discharge, unless—
 (4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.
11 U.S.C. § 727(a)(4)(A).

terial and made with intent. *Korte v. United States Internal Revenue Service (In re Korte)*, 262 B.R. 464, 474 (8th Cir. BAP 2001). Deliberate omissions from the schedules may constitute false oaths and result in the denial of a discharge. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984). Since defendants will rarely admit their fraudulent intent, actual intent may be established by circumstantial evidence. *Weese v. Lambert (In re Lambert)*, 280 B.R. 463, 468 (Bankr. W.D.Mo.2002). A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992). In addition to circumstantial evidence, statements made with reckless indifference to the truth are regarded as intentionally false. *In re Korte*, 262 B.R. at 474.

 The number and extent of the omissions on the Debtor's bankruptcy schedules easily satisfy the element of intent required under § 727(a)(4)(A). The Debtor admits to omitting child support from her income, omitting expenses, failing to disclose the transfer of assets on her Statement of Financial Affairs, and failing to list her ex-husband as a co-debtor. In addition, the Debtor admits that the Highland Property is scheduled incorrectly, showing no equity in the property instead of approximately $12,000.00 in nonexempt equity.[9] Although the Debtor stated that she told her bankruptcy attorney of these facts, that testimony was uncorroborated and must be disregarded as self-serving. The fact that the Debtor has been involved in an acrimonious and stressful marital separation and divorce does not excuse her failure to review her bankruptcy schedules and statements and insure their honesty and accuracy. Based on the Court's observations, the Debtor is an intelligent, educated and articulate person.[10] She is a licensed real estate agent, owns her own real estate company, and has seven agents working for her. The Debtor's explanations for the numerous omissions and failure to correctly identify equity in her property are not credible. The Debtor stated that she didn't understand the bankruptcy forms and didn't understand that when she was asked to place the amount of the secured claim on the schedules it was supposed to be the amount owed to the creditor. This latter contention is especially unbelievable coming from a licensed real estate broker. The Debtor has a strict obligation to file complete and accurate schedules. *Melancon v. Jones (In re Jones)*, 292 B.R. 555, 562 (Bankr. E.D.Tex.2003). The Court finds that the number and pattern of omissions constitute false oaths and an intent to deceive.

 Not only does the Plaintiff have to prove that the Debtor had the requisite intent to deceive, but he must also prove that the false oaths were material. "The subject matter of a false oath is material, and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Palatine National Bank of Palatine, Illinois v. Olson (In re*

---

9. The Court notes that in the property settlement the parties agreed that the Highland Property had $28,000.00 in equity. There was no testimony to explain why the property is now mortgaged for that precise amount, leaving the Debtor with non-exempt equity of just $12,000.00.

10. The Plaintiff stated without objection that the Debtor has a master's degree in marketing.

*Olson*), 916 F.2d 481, 484 (8th Cir.1990)(quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)). The bar for materiality is set fairly low. *See Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000).

 In the present case, the Debtor omitted almost 20% of her income ($800.00 of $3,230.82) and an unknown amount of her expenses related to the care and education of her children. The Debtor not only failed to adequately represent her present income, but she also failed to list almost $12,000.00 in non-exempt equity in the Highland Property and failed to disclose the liquidation of stocks and QDRO on her Statement of Financial Affairs. Each of these omissions or inaccuracies is material, in the Court's view, and might be sufficient—standing alone—to warrant a denial of discharge. When the cumulative effect of these omissions and inaccuracies is considered, there can be little doubt that they are material and merit a denial of discharge.

 The Court will acknowledge that a denial of discharge is a harsh penalty and may have severe and undesirable consequences for the Debtor here. However, § 727(a)(4)(A) provides just such a penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest in her case. *In re Sears*, 246 B.R. at 347. The debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *Id.* Statements made in schedules are signed under penalties of perjury and have the force and effect of oaths. *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr.E.D.Ark. 1993). "[T]he Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole." *National Am. Ins. Co. v. Guajardo (In re Guajardo)*, 215 B.R. 739, 742 (Bankr.W.D.Ark.1997).

Based on the foregoing, this Court is convinced that there is more than ample evidence to sustain the Plaintiff's claim based on § 727(a)(4)(A) and to deny the Debtor a discharge.

### B. Violation of Section 727(a)(5)

 Section 727(a)(5) provides for a denial of a debtor's discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities..." 11 U.S.C. § 727(a)(5). The party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 955 (Bankr.N.D.Ill. 1995). Once the plaintiff's burden is satisfied, it is incumbent upon the debtor to provide a satisfactory explanation for the loss. *Id.* What constitutes a "satisfactory" explanation is left to the discretion of the Court. *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 814 (7th Cir.1966); *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr. N.D.Ill.1988). The Debtor's explanation must consist of more than "a vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Potter*, 88 B.R. at 849.

 These requirements are readily met in this case. The Plaintiff showed that the Debtor did have substantial and

identifiable property that would have been available to her creditors. In response to Question 10 on the Statement of Financial Affairs,[11] the Debtor failed to disclose the liquidation of stocks and QDRO that she had received in the property settlement. In fact, Mrs. Gray received the distribution from the QDRO in June 2002, just four months before filing her bankruptcy petition. Mrs. Gray stated that she had spent all of the money she received in the property settlement by August 2002, just two months before filing bankruptcy. The Court is not satisfied with her vague explanation that she spent the money fixing her newly acquired residence and paying bills. Without documentation or some other corroboration, the Court is left with nothing to substantiate such a feeble explanation. Therefore, the Court finds that the Debtor failed to satisfactorily explain the disappearance of approximately $15,700.00 [12] in the months prior to filing for bankruptcy and that denial of discharge is warranted on that basis.

### C. Dischargeability under § 523(a)(15)

As a result of the Court's denying the Debtor a discharge pursuant to § 727(a)(4)(A) and § 727(a)(5), the issue of whether the MBNA debt is nondischargeable pursuant to § 523(a)(15) is moot.[13] The denial of discharge converts this debt, like the other debts, into nondischargeable debts. Furthermore, the Plaintiff failed to meet his burden of proof under § 523(a)(15). Therefore, the Court will deny the Plaintiff's request pursuant to § 523(a)(15).

### CONCLUSION

For the reasons set out herein, the Court finds that the Plaintiff has met his burden under 11 U.S.C. § 727 of proving that the Debtor is not entitled to discharge for her numerous omissions from her bankruptcy schedules and failure to adequately explain the dissipation of assets. However, for the reasons discussed above, the Plaintiff is not entitled to relief under 11 U.S.C. § 523(a)(15).

Therefore, it is

**ORDERED** that the March 23, 2003, text entry (Document # 13 in Case No. 02–45946) be set aside and vacated. It is

**FURTHER ORDERED** that the Plaintiff's Objection to Discharge of the Debtor

---

**11.** Question 10 in the Statement of Financial Affairs, asks the following question:

> List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case.

**12.** The Court arrived at this amount by adding $9,000.00 from the QDRO distribution and $6,700.00 from the liquidation of stocks.

**13.** Section 523(a)(15) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;
> 11 U.S.C. § 523(a)(15).

pursuant to 11 U.S.C. § 727 be and is hereby SUSTAINED, and the Debtor, Estella Andreal Gray, shall be and is hereby denied a discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(5). It is

**FURTHER ORDERED** that the Plaintiff's Complaint to Determine Dischargeability pursuant to 11 U.S.C. § 523(a)(15) be and is hereby DENIED.