In re Robert David RILEY, Debtor.

Tracy Lynn Riley, Plaintiff,

v.

Robert David Riley, Defendant.

Bankruptcy No. 03–21244–DRD.
Adversary No. 03–02045–DRD.

United States Bankruptcy Court,
W.D. Missouri,
Central Division.

Jan. 29, 2004.

874

Gwendolyn S. Froeschner, Shurtleff, Froeschner, Bunn & Hoffman, Columbia, MO, for Debtor/Defendant.

James R. Wyrsch, Stephen G. Mirakian, Wyrsch, Hobbs & Mirakian, Kansas City, MO, for Plaintiff.

## MEMORANDUM OPINION
## AND ORDER

DENNIS R. DOW, Bankruptcy Judge.

This is an adversary proceeding in which Tracy Lynn (Hayes) Riley ("Plaintiff") asks this Court to deny a discharge to her ex-husband, the debtor Robert David Riley ("Debtor") pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4) and (a)(5). This Court has jurisdiction over the Complaint under 28 U.S.C. § 1334(b). It is a core

proceeding which this Court may hear and determine pursuant to 28 U.S.C. § 157(a) and (b)(2)(J). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Plaintiff has failed to satisfy her burden of demonstrating that Debtor has transferred assets with intent to hinder, delay or defraud creditors, failed to keep or preserve adequate books and records, made a false oath, or failed to satisfactorily explain loss of assets.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and Debtor were married in October, 1994. The marriage lasted until some time in August, 2002 when they separated. Some time thereafter, Debtor initiated an action in the Circuit Court of Cooper County, Missouri to dissolve the marriage and engaged Barbara L. Teeple to represent him. The dissolution was a vigorously contested proceeding and consumed three days of trial time. The record reflects that although there were some issues relating to the valuation and division of property, the principal disagreement among the parties was custody of the two children born of the marriage. After hearing the testimony and considering the evidence submitted by the parties, the Circuit Court entered a Dissolution of Marriage Docket Entry on July 8, 2002,[1] which among other things determined which items of property were to be set aside to each of the parties. Attached to the docket entry as Exhibit D is a list of items set aside to Debtor. After considering the values ascribed to the property so divided,

the Court held that in order to equalize the property division, Debtor should pay Plaintiff the sum of $8,000. That obligation was, however, subject to certain contingencies. Specifically, the Court authorized Debtor to offset against that liability any portion of the fees of the guardian ad litem appointed to represent the children in excess of his share paid by Debtor and any costs and expenses paid by him in connection with a lawsuit commenced against him by Plaintiff's father to replevin a tractor. The Court awarded the custody of the children to the Debtor and directed Plaintiff to pay the sum of $500 per month as child support. The Court directed counsel for Debtor to prepare a formal judgment entry. That Judgment and Order of Dissolution of Marriage confirming the dissolution, the proposed division of property, the custody of the children and the awards of child support and property division equalization was entered on September 9, 2002.[2]

In her testimony, Plaintiff identifies certain items of property set aside to Debtor for which she claims he has failed to account. In particular, she identified the following items of property (with their corresponding values) listed on Exhibit D to both the docket entry and judgment set aside to Debtor: 1993 livestock trailer—$1,500; one bull, six cows and three calves—$5,000; mower—$1,500; rake—$750. Plaintiff testified that Debtor had these items in his possession at the time of their separation in August, 2000, although she admitted she had no personal knowledge as to whether these items of property were in the Debtor's possession at the time he filed his bankruptcy on May 22, 2003. Plaintiff appears to claim in the alternative either that Debtor possessed this property at the time of his bankruptcy filing and

---

1. Plaintiff's Ex. 1.

2. Plaintiff's Ex. 2.

failed to list it on his schedules, thus making a false oath, or disposed of the property within one year of the bankruptcy filing with the intent to hinder, delay or defraud his creditors. Plaintiff also alleges that Debtor failed to provide a satisfactory explanation as to the fate of these items and has not kept adequate records regarding their disposition and should be denied a discharge for those reasons as well.

Debtor testified that he did not own any of these items when he filed bankruptcy in May, 2003 and thus cannot be penalized for not having scheduled them. He further testified that each of the items was sold, surrendered or otherwise transferred in transactions which occurred more than one year prior to the filing. He further contends that his testimony and certain documentary evidence he offered established satisfactory explanations for the disposition of the property and that the records of those transactions are adequate under the circumstances.

## II. DISCUSSION

### A. General Principles and Burden of Proof

■■■■ Obtaining a discharge is the key component of the "fresh start" a bankruptcy proceeding is designed to give a debtor. Accordingly, denying a discharge to a debtor is considered to be "harsh and drastic penalty." *American Bank v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n. 1 (Bankr.W.D.Mo.1985). For that reason, the grounds for denial of discharge listed in § 727 are strictly construed in the favor of the debtor. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (8th Cir. BAP 2002); *Gray v. Gray (In re Gray)*, 295 B.R. 338, 343 (Bankr.W.D.Mo. 2003); *In re Stanke*, 234 B.R. 449, 456 (Bankr.W.D.Mo.1999). A trustee or creditor requesting that the court deny a debtor a discharge bears the burden of proving

each of the elements of the applicable claim by a preponderance of the evidence. *Sendecky*, 283 B.R. at 763; *Gray*, 295 B.R. at 343; *Kirchner v. Kirchner (In re Kirchner)*, 206 B.R. 965, 973 (Bankr.W.D.Mo. 1997).

### B. Specific Claims for Denial of Discharge

#### 1. Transfer With Intent to Hinder, Delay or Defraud Creditors

■■■■ To make a case for denial of discharge under § 727(a)(2), a plaintiff must demonstrate: (1) that a transfer of property occurred; (2) that the property transferred was owned by the debtor; (3) that the transfer occurred within one year before the date the bankruptcy petition was filed; and (4) that the debtor had, at the time of the transfer the intent to hinder, delay or defraud a creditor. *Stanke*, 234 B.R. at 456; *Diamond Bank v. Carter (In re Carter)*, 203 B.R. 697, 706 (Bankr. W.D.Mo.1996). Actual intent to hinder, delay or defraud must be demonstrated, but because direct evidence of such intent is rarely available, it may be proven by circumstantial evidence. *McCormick v. Security State Bank*, 822 F.2d 806, 808 (8th Cir.1987); *Stanke*, 234 B.R. at 457; *Carter*, 203 B.R. at 706. Factors the courts have considered in determining whether the debtor acted with actual intent to hinder, delay or defraud include: (1) lack or inadequacy of consideration; (2) family, friendship or other close relationship between transferor and transferee; (3) retention of possession, benefit or use of the property in question; (4) financial condition of the transferor prior to and after the transaction; (5) conveyance of all of debtor's property; (6) secrecy of conveyance; (7) existence of trust or trust relationship; (8) existence or cumulative effect of pattern or series of transactions

or course of conduct after pendency or threat of suit; (9) instrument affecting the transfer suspiciously states it is bona fide; (10) debtor makes voluntary gift to family member; and (11) general chronology of events and transactions under inquiry. *Stanke,* 234 B.R. at 457; *Carter,* 203 B.R. at 707.

On the basis of the evidentiary record and arguments of the parties in this case, the principal issues are: (1) did the transfers of the items of property identified by plaintiff take place within one year of the date of the bankruptcy filing; and (2) were those transfers effectuated with intent to hinder, delay or defraud one or more of Debtor's creditors.

With regard to the question of when the transfers occurred, the evidence and argument focuses almost exclusively upon the transfer of the cattle. Debtor claims this transfer occurred in January, 2002. In support of that position, he offers the bill of sale dated January 24, 2002 executed by him and his father,[3] a check dated the following day, signed by his father in the amount of the agreed sale price ($3,500)[4] and a check issued by the Debtor to Ms. Teeple, his lawyer in the dissolution proceeding, also on January 25, in that same amount.[5] The check to Ms. Teeple relates to the date of the transfer for the reason that the Debtor testified that the sale was made for the purpose of raising funds to pay her. In opposition, the Plaintiff claims the transfer occurred in November, 2002. In support of that position, she offers American Angus Association registration forms bearing a date of November 1, 2002 memorializing a transfer of the cattle by Debtor,[6] a substantially contemporaneous

filing of a membership application by Riley Angus, the name used by Debtor's father, dated November 19, 2002 and an advertisement for the sale of a bull including the Debtor's telephone number.[7]

With regard to the advertisement, Debtor testified that the animal described was not his, but his father's whom he was assisting and that the bull was later sold and his father received the proceeds. The Court also notes that the advertisement is undated. Debtor also testified that the transfer paperwork to register these cattle in his father's name with the American Angus Association was executed at the time of the sale in January, 2002 and filled in and submitted later by his father. He testified that his understanding is that the document was not submitted earlier because of the cost involved and it was dated as of November 1 and not as of the earlier date on which the sale occurred because filing the registration documentation in November to register cattle acquired in an earlier sale would have caused his father to have to pay a late fee.

Plaintiff claims that the check issued to the Debtor which the Debtor claims represents the sale proceeds was actually just a loan from the Debtor's parents to him to pay attorneys' fees. Plaintiff observes, for example, that there was no notation on the memo line on the check. Plaintiff's argument, however, is little more than speculation, unsupported by any evidence. The absence of a notation on the memo line denotes nothing. Even if the memo line had made reference to Debtor's dissolution proceeding counsel (as does the memo line on the check relating to the Debtor's sale of an ATV) that would be consistent with

3. Defendant's Ex. 4.

4. Defendant's Ex. 5.

5. Defendant's Ex. 9.

6. Plaintiff's Ex. 4.

7. Plaintiff's Ex. 5.

the Debtor's testimony that the underlying purpose of the transaction was to raise funds to pay his counsel. In order to accept Plaintiff's explanation, the Court must believe that the Debtor and his father concocted the bill of sale and backdated it. The Court chooses not to draw that inference, but rather to believe the Debtor's testimony as to the timing of the transaction. First, Debtor's account of the timing is consistent not only with the bill of sale, but the other documentation relating to the proceeds of the sale and to the Debtor's stated purpose for making the sale. Debtor sold the property to raise funds to pay his counsel. The checks, both to the Debtor for the sale proceeds and to Debtor's counsel in the same amount are dated within one day of the date on the bill of sale. Second, it is easier for the Court to believe the Debtor's explanation as to why the American Angus Association transfer documentation was executed and dated as and when it was than to believe that the Debtor and his father conspired to create and backdate the bill of sale, an inference which is unsupported by evidence. There was nothing in the content or tone of the Debtor's answers to questions or in his demeanor to cause the Court to doubt his credibility.

Plaintiff makes much of the fact that the list of property set aside to Debtor in the dissolution proceeding attached to both the docket entry and the final judgment includes the cattle and other items which, according to the Debtor's testimony, he disposed of prior to the filing of those documents. Plaintiff suggests not only that it was incumbent upon the Debtor to advise the court if the property had been transferred, but that it would have been in his best interest to do so. The dissolution court ordered the Debtor to pay Plaintiff $8,000 to equalize the distribution of property. Plaintiff suggests that if the Debtor did not in fact own these items, the listed value of which is $8,750, he would have raised that issue with the court to modify or eliminate that monetary award. The Debtor testified, however, that he did not understand things that way. The listings of property assigned to the parties in the dissolution proceeding were apparently based on schedules provided by them earlier in the proceeding. The Debtor testified that he did not understand that if he no longer possessed the property, he was obligated to advise the Court. The Debtor testified that he was "responsible" for those items of property or their proceeds. Whether Debtor's understanding is correct is not the issue. The Court believes the Debtor truthfully testified as to his understanding. Since the Debtor apparently believed that he was accountable for this property regardless of whether he still had it in his possession at the time of the entry of the judgment, it explains why he did not feel compelled to advise the court that the property had been disposed of.

Plaintiff claims that the explanation that the cattle were sold to Debtor's father is implausible considering that the Debtor apparently still owed his father money on a loan to finance the purchase of cattle made several years before. Plaintiff's argument is that if he was still owed money at this time, the father could have set off his obligation to the Debtor for the sale price of the cattle in the 2002 transaction against the Debtor's obligation to his father for the earlier loan used by the parties to buy cattle. Plaintiff further suggests that if the transaction took place as Debtor suggested, the father would have essentially paid for these cattle twice. On the other hand, the Debtor testified that the cattle purchased with the proceeds of the loan made to him and the Plaintiff by his parents were not necessarily the same cattle being sold to his father in January, 2002. Plaintiff produced no evidence that

they were. A local bank had also made a loan to Plaintiff and Debtor to buy cattle. Even if the loan and sale transactions were unrelated, however, his father might still have sought to set off the one obligation against the other. Debtor further testified, however, that his father did not seek to do this because he knew that his son needed the money to pay his lawyer in the dissolution proceeding. The Court understands why a father might want to provide such assistance to his son even though he might be owed money by the son on a previous transaction and, therefore, finds the explanation credible.

For these reasons, the Court finds the preponderance of the evidence suggests that the transfer of the cattle occurred in January, 2002 and not in November, 2002 or at some later date which would place the transfer within the one-year period prior to the filing of the petition.

Plaintiff has similarly failed to discharge her burden with regard to demonstrating that any of the other transfers occurred within the one-year period. The transfer of the ATV,[8] although extremely close, occurred outside the one-year period. Debtor's bankruptcy petition was filed on May 22, 2003. The bill of sale for the transfer of the ATV[9] indicates that the transaction occurred on May 20, 2002, just outside the one-year period. The Debtor's testimony is that that sale was also done to raise proceeds to pay his lawyer in the dissolution proceeding. That assertion is supported by evidence that on the day after the sale, the Debtor issued a check to the law firm with whom Ms. Teeper was associated in the same sum as he received from his father in payment for the ATV.[10] Debtor testified he surrendered the rake to John Deere, sold the trailer at auction and gave the mower to his father. There was no testimony establishing the dates on which any of these things occurred. Accordingly, it is not possible for the court to find that those transfers were made within the one-year period prior to the filing of the petition.

Even, however, were this Court to find that any of these transfers occurred within the one-year period, Plaintiff has wholly failed to prove that any such transfer was made with the actual intent to hinder, delay or defraud the Debtor's creditors. There is no direct evidence of such intent. The only direct evidence that exists as to the purpose of some of the transfers was that they were made to raise funds to pay counsel fees, not to place the property beyond the reach of creditors. That is true with regard to both the cattle and the ATV. Debtor testified that he gave the mower to his father because it was not functional, with the required repairs costing more than he could afford. There is no evidence as to precisely why the trailer was sold or what was done with the proceeds. The rake was surrendered to a creditor with a lien on it.

The Court does not believe, based upon the evidence presented, that it would be appropriate to infer fraud from the circumstances. Although some of the transfers were made to a relative, specifically the Debtor's father, those transfers were not gratuitous. Plaintiff presented no evidence that would permit the Court to find that any of the items of property were

---

**8.** Although there was much discussion about the ATV, it is not clear that the transfer of this property is really an issue. It was neither identified by Plaintiff in her testimony, nor listed on Exhibit D to the docket entry or judgment. It is, however, included on Exhibit B, identifying non-marital property set aside to Debtor.

**9.** Defendant's Ex. 7.

**10.** Defendant's Ex. 8 and 6.

transferred for less than their fair value. As previously observed, the mower was not only not functional at the time it was transferred, and therefore of little or no value, but both it and the rake were ascribed no value in the docket entry.[11] No evidence was presented of the value of the trailer or the price received on its sale. There was no evidence that the ATV was not sold for its approximate value. As to the cattle, although the value ascribed to them in the docket entry and the dissolution judgment was $5,000, the $3,500 the Debtor received is 70% of that amount. Even if the true value of the cattle at the time of the transfer was $5,000, of which there is no independent evidence, the receipt of 70% of that amount is not manifestly inadequate. *Cf. Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201, 203 (5th Cir.1980) and subsequent cases suggesting 70% a breakpoint for "reasonably equivalent value" analysis in fraudulent conveyance context. None of the other factors identified by the courts as giving rise to an inference of fraudulent intent are present in this case. The transfers did not individually or in the aggregate comprise a substantial portion of the Debtor's assets. He did not retain possession of the assets.[12] There is no evidence that Debtor was insolvent or rendered insolvent as a result of the transfers. The transfers were not concealed.

It is also not clear which creditor or creditors the Debtor might have had a motive to attempt to defraud by disposing of these assets. Although the dissolution judgment ordered Debtor to pay his ex-wife $8,000, as he testified, that obligation was subject to numerous contingencies which may have had the effect of eliminat-

ing or significantly reducing it. Specifically, Debtor had the right to offset against that sum any costs he incurred in the replevin proceeding brought against him by Plaintiff's father. In addition, Debtor testified that Plaintiff did not make all of the $500 per month child support payments he was ordered to make by the dissolution court. Plaintiff suggests that the bank which had loaned the parties money to buy cattle may have been pressing the Debtor at the time of the transfer of one or more of these assets. The record is, however, barren of evidence as to when the bank may have taken or threatened to take action against the Debtor or of the course or outcome of those proceedings. In addition, the Debtor would not necessarily have been motivated to transfer property to keep it from the bank given that Plaintiff had been ordered to satisfy the claim of the bank and Debtor had the right to call upon her to indemnify him on that claim. There is no evidence that any other litigation was pending or threatened against the Debtor at the time of any of the transfers.

## 2. Failure to Keep Books and Records

A debtor may be denied a discharge, pursuant to § 727(a)(3), for failure to keep or preserve books from which his financial situation may be ascertained, unless the failure is justified under all the circumstances of the case. The Court must determine whether the debtor's records were sufficient and, if not, whether the failure to maintain sufficient records was justified under all the circumstances. *Sendecky*, 283 B.R. at 764. Intent is not an element of this ground for denial of discharge; the standard imposed is one of reasonableness. *Davis v. Wolfe (In re*

---

11. See Plaintiff's Ex. 1, p. 6.

12. Although one of these items was apparently given back to Debtor sometime later after his father purchased a replacement, there is

no proof as to when that happened or that this reconveyance was part of their original agreement.

*Wolfe*), 232 B.R. 741, 745 (8th Cir. BAP 1999). In determining the adequacy of the records maintained, the Court should consider the complexity of the debtor's business, the customary business practices for record keeping in that type of business, the degree of accuracy of existing books, and the debtor's courtroom demeanor. *See, e.g., Sendecky*, 283 B.R. at 764; *See also, In re Minesal*, 81 B.R. 477 (Bankr. E.D.Wis.1988). Discharge should not be denied if the debtor's records, though poorly organized, are reasonably sufficient to ascertain the debtor's financial condition. *See id.; see also, In re Becker*, 74 B.R. 233 (Bankr.E.D.Tenn.1987). Once the plaintiff establishes the records are inadequate, the burden of production shifts to the debtor to demonstrate that the failure to keep adequate records was justified under all the circumstances. *Sendecky*, 283 B.R. at 764. In order to determine if the failure was justified, the Court must first determine what records someone in like circumstances to the debtor would keep. *See, e.g., id.*

 The Court concludes that on this record, Plaintiff has not met her burden of establishing that the Debtor's records were inadequate. In the case of the cattle, the transfer was documented by a bill of sale signed by both parties and the consideration documented by a check issued by the Debtor's father to the Debtor for the purchase price. In addition, although it is a source of controversy with regard to the date of the transfer, the transfer and the registration of the cattle under a trade name utilized by the Debtor's father are also memorialized on American Angus Association registration certificates executed by the Debtor as transferor. Based on these documents, the Court finds that there has been no failure to keep adequate books and records with regard to the cattle. The transfer of the ATV was also documented by a bill of sale signed by the Debtor and his father and the consideration for the transfer documented by the check the Debtor received for the purchase price. There is no evidence that the ATV was a titled vehicle such that it would be necessary or customary to assign ownership of it other than by a bill of sale. As to the mower, the Debtor testified about the transfer and also testified that it was in disrepair, not functional and of little or any value at the time. Also, the state court assigned no value to the mower in its docket entry. No evidence was presented to show that it would be customary to document the transfer of the mower in any particular way. Under the circumstances, and considering that the mower was apparently of no value, the Court does not consider it unreasonable or unjustified that no documentation exists regarding its transfer. The rake was also assigned no value in the docket entry. Debtor explained that the rake was returned to John Deere. No evidence was presented to demonstrate that a return of collateral of this kind is ordinarily accompanied by the creation of some document which the Debtor in this case was unable to produce. Finally, the same is true with regard to the trailer which, according to the Debtor's testimony, was put on a lot and sold for him by the person who owned and operated the lot.

There has been no general failure on the Debtor's part to keep books and records from which his assets, liabilities and business transactions could be ascertained. The Debtor was not a sophisticated businessman and the transactions at issue were not in fact business transactions. As a result, one would expect less in the way of documentation. No evidence was presented that any of these transactions involved property which standard conventions dictate the type of documentation ordinarily executed upon transfer. There

is in fact no evidence as to what records might customarily be generated, if any, in transfers of these types. Given all these facts, and the Debtor's explanations of the transfers, which the Court finds generally credible, the Court finds the Debtor did not fail to keep adequate books and records from which his financial situation may be ascertained.

### 3. The Making of a False Oath or Account

A Debtor may be denied a discharge, pursuant to § 727(a)(4)(A), if the debtor knowingly and fraudulently, in or in connection with a case, made a false oath or account. In order to deny a discharge to a debtor under this subparagraph, the plaintiff must establish that: (1) debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter. *See Korte v. United States of America Internal Revenue Service (In re Korte),* 262 B.R. 464, 474 (8th Cir. BAP 2001). Since an admission or other direct evidence of fraudulent intent is rarely available, actual intent may be established by circumstantial evidence. *Gray,* 295 B.R. at 343; *Weese v. Lambert (In re Lambert),* 280 B.R. 463, 468 (Bankr. W.D.Mo.2002). A series or pattern of errors or omissions may have the effect of giving rise to an inference of intent to deceive. *Gray,* 295 B.R. at 344. An omission or false statement is considered material if it relates to the debtor's business transactions or estate or concerns the discovery of assets or the existence or disposition of property. *Palatine Nat'l Bank of Palatine, Ill. v. Olson (In re Olson),* 916 F.2d 481, 484 (8th Cir.1990); *Korte,* 262 B.R. at 474; *Gray,* 295 B.R. at 345.

Plaintiff's principal contention with regard to this potential ground for denial of discharge is apparently that Debtor failed to list the identified assets in his Schedules of Assets and Liabilities when he filed bankruptcy. There is, however, no evidence that the Debtor owned any of these assets on the date he filed his petition. Plaintiff testified that the Debtor owned these assets at the time of their separation in 2000, but that she could not say that he owned them at the time he filed bankruptcy. Debtor testified that each of these assets was sold, surrendered or otherwise transferred before he filed. He testified unequivocally, without contradiction, that all of the assets listed on the schedule of property set aside to him in the dissolution judgment which he still owned at the time he filed bankruptcy were listed by him and that any other assets had been disposed of prior to the time of his filing. The Court finds that the Debtor did not own any of these assets at the time he filed his bankruptcy petition. He can, therefore, hardly be denied a discharge for having not scheduled them.

Plaintiff also appears to claim that Debtor may have made a false oath by not identifying in response to question 10 of the Statement of Financial Affairs that he transferred certain of these assets within one year prior to the filing of the petition. As noted above, no evidence was introduced to establish when the livestock trailer, the mower and the rake were transferred. Accordingly, as to each of these items, Plaintiff has not satisfied her burden of demonstrating that the transfer occurred within one year of the filing. As to the cattle and the ATV, for the reasons stated above, this Court finds that the preponderance of the evidence establishes that the transfers occurred outside the one-year time period. Accordingly, no information as to these transfers would have been called for by question no. 10 on the Statement of Financial Affairs and Debtor's failure to disclose them in response cannot be a false oath.

### 4. Failure to Explain Loss of Assets

 Plaintiff also claims that Debtor has failed to satisfactorily explain the loss of the identified assets set aside to him in the dissolution judgment and should as a result be denied a discharge under § 727(a)(5). That section provides for denial of discharge when "the debtor has failed to explain satisfactorily, before the determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." As the party objecting to discharge, Plaintiff has the burden of proving that a loss or shrinkage of assets actually occurred. *See Sendecky*, 283 B.R. at 765. Once that burden has been met, it is then incumbent upon the debtor to provide a satisfactory explanation for the loss of the asset. *Id.* at 766; *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 618 (10th Cir. BAP 2001); *Gray*, 295 B.R. at 345. What constitutes a "satisfactory" explanation is left to the discretion of the Court. *Gray*, 295 B.R. at 345. The debtor will not be entitled to a discharge if the explanation is "too vague indefinite or unsatisfactory." *Id.; Carter*, 203 B.R. at 707; *United States of America v. Hartman (In re Hartman)*, 181 B.R. 410, 413 (Bankr.W.D.Mo.1995). The debtor need only provide an explanation of the loss of the assets; it need not necessarily be meritorious. *Norton Bankruptcy Law and Practice 2d*, § 74:15. In other words, the debtor satisfactorily explains the loss of an asset even if his explanation is that the asset was transferred in a transaction that might have been done to hinder, delay or defraud creditors. Although that explanation might create other issues for the debtor and give rise to an objection to discharge on another basis, it is nonetheless a satisfactory explanation for the loss of the asset.

 In this case, the Debtor satisfactorily explained the loss of each of the items identified by the Plaintiff as being in his possession at the time of their separation in 2000, but not listed on the Debtor's Schedules of Assets and Liabilities. The cattle listed in the dissolution judgment were sold to the Debtor's father. Plaintiff does not seem to contest that explanation, but suggests that the transfer occurred within one year and was done with an intent to hinder, delay or defraud creditors, an objection discussed thoroughly above. The Debtor testified that the mower was given to his father and that no consideration was given for it for the reason that it was inoperable and in his judgment without value. The rake, according to the Debtor's testimony, was surrendered to John Deere, which had a security interest in the item. The ATV was also sold to the Debtor's father in a transaction to raise funds to pay Debtor's lawyer in the dissolution proceeding and documented with a bill of sale. Finally, the Debtor testified that he sold the trailer as well. Although the Debtor could not remember all of the details of the sale, his account is sufficient to allow the Court to ascertain what happened to the asset and his explanation is not so deficient as to warrant denying the Debtor a discharge.

### III. CONCLUSION AND ORDER

In summary, the Court finds that the disposition of all of the assets identified by Plaintiff in her testimony and whose fate she questioned was satisfactorily explained by the Debtor and that either sufficient records were maintained as to the disposition of those assets or that the failure to maintain records is under the circumstances justified. The Court further finds that because the Debtor did not own any of the identified assets at the time he filed his bankruptcy petition, he did not make a false oath by not listing them on his Sched-

886

ules of Assets and Liabilities. The Court further finds that the preponderance of the evidence demonstrates that the cattle and the ATV were transferred more than one year prior to the filing of Debtor's bankruptcy petition and that no evidence was presented with which to support a finding that the trailer, the rake or the mower were disposed of within the one-year period. Finally, the Court finds that even if any of the assets in question were transferred within the one-year period prior to filing, none of those transfers was effectuated with intent to hinder, delay or defraud any of the Debtor's creditors. For that reason, it is therefore

ORDERED that Plaintiff's objections to the Debtor's discharge are hereby overruled.